[No. D036319. Fourth Dist., Div. One. Apr. 23, 2001.]

ASHOK ISRANI, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CITY OF SAN DIEGO et al., Real Parties in Interest.

**COUNSEL** ·

Asaro, Keagy, Freeland & McKinley, Roscoe D. Keagy, Richard R. Freeland; and Charles F. Campbell for Petitioner.

No appearance for Respondent.

Casey Gwinn, City Attorney, and Paul G. Edmondson, Deputy City Attorney, for Real Party in Interest City of San Diego.

Luce, Forward, Hamilton & Scripps, Christopher K. Barnette and Brian C. Fish for Real Party in Interest Vietnam Veterans of San Diego, Inc.

## OPINION

**HUFFMAN, Acting P. J.**—Ashok Israni filed a petition for writ of mandate after the trial court denied his application to vacate its prior order granting the City of San Diego's (City) ex parte application in a condemnation action for an order of immediate possession (OIP) of his property. On the effective date of the OIP, and for some 10 years previously, the property had been leased to the Vietnam Veterans of San Diego, Inc. (VVSD) for use as a homeless services center. Israni contends: (1) he was denied his right to procedural due process; (2) he had standing to assert under Code of Civil Procedure[1] section 1255.410, subdivision (c) (hereafter section 1255.410(c)) that City did not have an urgent need for immediate possession of the property; (3) there is no substantial evidence to show City had a section 1255.410(c) urgent need for immediate possession; (4) the trial court erred by finding the OIP did not create a substantial hardship on Israni that would have warranted a section 1255.420 stay of the OIP; and (5) the trial court erred by finding there was no reasonable probability he would prevail on his challenge to City's right to take the property that would justify a section 1255.430 stay of the OIP.

Finding that the challenged orders granting immediate possession and denying a stay of possession were procedurally and substantively well grounded, we deny the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Israni owns real property (Property) in City (a real party in interest in this matter). On July 6, 1990, Israni entered into a lease agreement with VVSD, a nonprofit corporation (also a real party in interest here), pursuant to which VVSD leased the Property from Israni for an initial term of five years for the operation of a homeless veterans' shelter and residential facility. On July 24, 1991, the lease agreement was amended (Lease Amendment) by the parties to provide for an initial 10-year term expiring on September 14, 2000, with VVSD's option to extend the lease term an additional 10 years by giving Israni at least 120 days' prior written notice before the expiration of the initial term. The Lease Amendment included the following condemnation provision: "If the property is taken under the power of eminent domain or sold under the threat of that power (all of which are called 'condemnation') this Lease shall terminate as to the part taken or sold on the date the condemning authority takes title or possession, [whichever] occurs first. . . . Tenant is anticipating making substantial structural modifications and tenant improvements during the Lease period. In order to

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

equitably pro-rate any condemnation award the following procedure is adopted. Any condemnation award shall be pro-rated between LESSOR and TENANT based upon the percentages shown in the appraisal conducted in accordance with the condemnation. In order to reimburse the TENANT for the improvements made subsequent to July 6, 1990, the appraisal shall provide separate line items for tenant improvements, existing improvements as of July 6, 1990, and real property value. Any condemnation payment to TEN-ANT shall be based on these percentages between LESSOR and TENANT. Any condemnation award shall be distributed first to the TENANT as per the appraisal procedure above, secondly to any ground LESSOR, mortgagee or beneficiary under a deed of trust [e]ncumbering the property, up to the amount of [its] interest and thirdly to the LESSOR the remainder of such award. Regardless of the percentage taken as noted above, the TENANT may terminate the Lease without any further obligations if in the TENANT's discretion the condemnation materially [a]ffects the TENANT's use of the property."

After July 6, 1990, VVSD expended approximately $900,000 for tenant improvements to the Property, including construction of two office buildings and a new residential structure. About 80 veterans reside in VVSD's 80-bed rehabilitation center (Center) on the Property. VVSD's headquarters and counseling facilities are located on the Property. VVSD operates its addiction recovery programs and employment and training programs on the Property. The Center provides services for approximately 80 residents and 50 to 60 nonresidents who are homeless, mentally ill, and/or substance-addicted. City issued a conditional use permit to VVSD for its operations on the Property.

On February 14, 2000, Israni received a letter from City setting forth its statutory offer to purchase the Property for $1,730,000, including $635,000 for the value of tenant improvements made after July 6, 1990. City's letter stated: "In accordance with the terms of your lease with [VVSD], the lease states that the lessee is to be reimbursed for the value of the improvements it has contributed to the property. We have appraised the contributory value of the tenant improvements made subsequent to July 6, 1990 at $635,000." Israni did not accept City's offer.

VVSD did not exercise on or before May 17, 2000 (120 days before the expiration of the initial lease term), its option to extend the lease term for an additional 10 years. The president of VVSD submitted a declaration in the proceedings below stating that since 1995, City had told VVSD it would be allowed to remain in possession of the Property throughout the anticipated condemnation process and VVSD therefore did not exercise its option to extend the term of the lease.

On August 8, 2000, City's council adopted a resolution of necessity, resolution No. R-293661 (Resolution), for condemnation of the Property, stating in part:

"Section 1. That the Vietnam Veterans/Homeless Center Project, a public improvement project, will provide for the acquisition of fee simple title and the improvements on the properties, as more particularly described herein, including the transitional housing facility operated by [VVSD], a not for profit entity.

"Section 2. That the public interest, convenience and necessity of the City, and the inhabitants thereof, require the acquisition of fee simple title to the property described hereafter and the improvements thereon, including the transitional housing facility operated by [VVSD], a not for profit entity, to assure the continuation of a transitional housing facility consistent with the Homeless Assistance Element of the San Diego Naval Training Center Reuse Plan. Additionally, this acquisition contributes toward meeting the City's low and moderate income housing needs identified in the Housing Element of the General Plan pursuant to Government Code Section 65583(c)(1).

"Section 3. That the Vietnam Veterans/Homeless Center Project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury. Currently the property is being utilized as a transitional housing facility for Vietnam Veterans and is in a location appropriate for its use. The acquisition of the property and the improvements thereon, will enhance the long term stability of the provider, [VVSD], and will enable it to expand its services. This property was identified in the Homeless Assistance Element of the Naval Training Center Reuse plan for acquisition by the City and said acquisition will enable the provider to remain at its current location. The Homeless Assistance Element was developed in order to comply with the provisions of the Base Closure Community Redevelopment and Homeless Assistance Act. The specific provisions of the Homeless Assistance Element were developed as the result of negotiations between the City and the major providers of homeless services in San Diego.

"Section 4. That the fee simple title and improvements thereon sought to be acquired are necessary for the operation, improvement and maintenance of the Vietnam Veterans/Homeless Center Project, and incidents thereto, including but not limited to, assuring the continued use and services at the property. These services have been deemed important to public welfare and have been included in the Homeless Assistance Element of the Naval Training Center Reuse Plan."

On August 9, 2000, City filed a complaint in eminent domain to acquire the Property for public purposes. A copy of City's Resolution was attached to the complaint. The complaint also recited the existence of an agreement between the Redevelopment Agency of the City of San Diego (Agency) and VVSD that created an Agency interest in the Property.

On August 22, 2000, City filed an ex parte application under section 1255.410(c) for an OIP authorizing it to take possession of the Property on the later of August 31 or three days after notice of the order is served on the owner and occupants of the Property. The application alleged City had an urgent need for possession of the Property, that its possession would not displace any person in actual or lawful possession of the Property, VVSD was the actual and lawful tenant of the Property and VVSD had consented to the application for the OIP. The trial court issued the OIP, stating:

"IT APPEARING and the Court determining that [City] is authorized by law · to acquire the Subject Property by eminent domain and to take immediate possession of the property; and [¶] IT FURTHER APPEARING and the Court determining that [City] will deposit in the San Diego County Treasury an amount deemed to be sufficient to satisfy the requirements of . . . section 1255.010 as the probable compensation to be awarded for the condemnation of the Subject Property in this action;

"IT IS HEREBY ORDERED that [City] is authorized and empowered to enter upon and take immediate possession and use of the Subject Property and to remove therefrom any and all persons, obstacles, improvements or structures of every kind or nature situated thereon, if necessary, and to fully possess and use said property and the improvements thereon on August 31, 2000, provided this Order is served at least 3 days prior thereto upon the record owner, or owners of said property, and upon the occupants, if any, or on the expiration of 3 days after such service, *whichever occurs later*, in accordance with section 1255.450 . . . ."[2] (Original italics.)

On August 23, City served Israni with copies of its eminent domain complaint and the OIP.

On August 28, 2000, Israni filed an ex parte application for an order vacating the OIP or in the alternative for an order staying the effective date of the OIP. His application alleged the following grounds for the requested order: "[Israni] was not given reasonable notice and opportunity to be heard at the *ex parte* proceedings at which the [OIP] was issued in violation of procedural due process as guaranteed by both the federal and state constitutions as well as the California Rules of Court; and, [¶] [City] did not

---

[2]The OIP conditioned its effectiveness on City's deposit with the San Diego County Treasurer of the probable compensation to be awarded in City's underlying eminent domain action. On August 22, 2000, City made the required deposit of $1,810,000.

establish each of the statutory conditions necessary for issuance of such an order as required under CCP § 1255.410."

Israni's application alternatively sought a section 1255.420 stay of the OIP on the grounds he would suffer substantial hardship were a stay not granted, immediate possession was not necessary, and City would not suffer substantial hardship were the transfer of possession delayed. His application also alternatively sought a section 1255.430 stay of the OIP on the ground that it was reasonably probable he would prevail on his challenge to City's right to take the Property. On August 28, 2000, City filed a memorandum of points and authorities in opposition to Israni's ex parte application. On August 28, the trial court issued an order staying the effective date of the OIP until it received additional briefing, and heard arguments on September 8.

On September 8, 2000, the trial court denied Israni's ex parte application to vacate or stay the OIP, stating:

"In the court's view, defendant Israni has not demonstrated substantial hardship within the meaning of CCP section 1255.420. [Israni] is an owner not in possession of the property. He executed a lease with [VVSD] on July 6, 1990 for a term of five years commencing September 15, 1990[.] That lease was modified to expire September 14 of 2000. On July 24, 1991[,] [Israni] and [VVSD] executed an amendment to modification of lease. This amendment specifically addressed the issue of condemnation and recited . . . [see condemnation provision in the lease amendment, quoted *ante*].

"Thus, it was the spirit of the agreement that in the event of condemnation [VVSD] was to be compensated for tenant improvements. We now have condemnation but if possession is not given to the City prior to expiration of the lease on September 14, 2000[,] [VVSD] will not receive anything for improvements and [Israni] will receive their total value. [Israni] maintains it is a hardship if possession is granted before September 15 because he will lose the right to over $600,000 in tenant improvements.

"The court does not view this as a hardship to [Israni] but rather as the loss of a windfall in the form of compensation for tenant improvements he acknowledged should go to [VVSD] in the event of condemnation. The court agrees that September 14, 2000[,] is a more appropriate possession date so as to not [a]ffect the rent, the full monthly rent due to [Israni].

"While the court is aware that [Israni] challenges [City's] right to take [the Property] as an illegal benefit to a private organization and while the court retains an open mind on that issue, the court cannot at this point find that

there is a reasonable probability [Israni] will prevail so as to stay the [OIP] under CCP section 1255.430[.] Therefore, the motion of defendant Israni is denied and the [OIP] entered on August 22nd is modified so that possession is ordered effective September 14, 2000[.] [¶] . . . [¶] I will make it September 13 just so as not to create problems, September 13, 2000."

City contended that as a nonoccupant of the Property, Israni did not have standing to challenge the OIP for noncompliance under section 1255.410(c), and the trial court made no express finding on whether City had established an urgent need for immediate possession of the Property under section 1255.410(c). On September 12, 2000, Israni filed the instant petition for a writ of mandate to set aside the trial court's order denying his ex parte application to vacate or stay the OIP, and to grant his application. The petition also sought an emergency order staying the September 13 effective date of the OIP.

We denied Israni's request for an immediate stay, but issued an order to show cause why the requested relief should not be granted. We received additional briefing on the issues from Israni, City and VVSD, and held oral argument.

DISCUSSION

I

*Applicable Law*

Section 1255.410 provides:

"(a) At the time of filing the complaint or at any time after filing the complaint and prior to entry of judgment, the plaintiff may apply ex parte to the court for an order for possession under this article, and the court shall make an order authorizing the plaintiff to take possession of the property if the plaintiff is entitled to take the property by eminent domain and has deposited pursuant to Article 1 (commencing with Section 1255.010) an amount that satisfies the requirements of that article.

"(b) The order for possession shall describe the property of which the plaintiff is authorized to take possession, which description may be by reference to the complaint, and shall state the date after which the plaintiff is authorized to take possession of the property.

"(c) Notwithstanding the time limits for notice prescribed by Section 1255.450 [i.e., 30 or 90 days' notice], if the court finds that the plaintiff has

an *urgent need* for possession of the property and that possession will not displace or unreasonably affect any person in actual and lawful possession of the property to be taken . . . , the court may make an order for possession of such property upon such notice, not less than three days, as the court deems appropriate under the circumstances of the case." (Italics added.)

Section 1255.420 provides: "Not later than 30 days after service of an order authorizing the plaintiff to take possession of property under Section 1255.410, any defendant or occupant of the property may move for relief from the order if the hardship to him of having possession taken at the time specified in the order is substantial. If the court determines that the hardship to the defendant or occupant is substantial, the court *may* stay the order until a date certain or impose terms and conditions limiting its operation *unless*, upon considering all relevant facts (including the schedule or plan of operation for execution of the public improvement and the situation of the property with respect to such schedule or plan), the court further determines (a) that the plaintiff needs possession of the property within the time specified in the order for possession and (b) that the hardship the plaintiff would suffer as a result of a stay or limitation of the order would be substantial." (Italics added.)

Section 1255.430 provides: "If the plaintiff has been authorized to take possession of property under Section 1255.410 and the defendant has objected to the plaintiff's right to take the property by eminent domain, the court, if it finds there is a reasonable probability the defendant will prevail, shall stay the order for possession until it has ruled on the defendant's objections."

Under this statutory scheme, the condemning authority may obtain possession of the property subject to an eminent domain action prior to judgment. Possession may be obtained on a showing of the right to condemn and the deposit of a statutorily determined amount of compensation. (§ 1255.010 et seq.) If the property is occupied as a dwelling, farm or business, the order of possession must be served on the property owner and occupants not fewer than 90 days prior to the date possession is ordered to be taken. If the property is occupied for other uses, the order of possession must be served not fewer than 30 days prior to the date possession is ordered to be taken. (§ 1255.450, subd. (b).) If the condemning authority wishes to obtain possession earlier than permitted under the 30 or 90-day notice requirements, it must make an additional showing that it has an urgent need for possession and that possession will not displace or unreasonably affect persons in actual possession of the property (§ 1255.410(c)).

If the court has issued an order for immediate possession under section 1255.420, any defendant or occupant of the property may within 30 days

after service of the order of possession seek relief from the order if loss of possession causes substantial hardship. In that event the court may stay the effective date of the order unless the condemning authority needs possession and delay in obtaining possession causes it substantial hardship.

In addition, under section 1255.430, if the court has issued an order for immediate possession and the defendant challenges the condemning authorities' right to take the property, the court shall, if it finds the challenge reasonably probable of success, stay the order of possession until it rules on the challenge to the right to take. Israni challenged the OIP and its effective date on all of the grounds available under the statutory scheme, and in addition claimed the OIP was issued without prior notice to him in violation of procedural due process.

## II

### *Israni Was Not Denied His Rights to Procedural Due Process*

■ Israni contends that because he was not afforded notice and an opportunity to be heard prior to the trial court's issuance of the OIP, he was denied his right to procedural due process in violation of the federal and state Constitutions and California Rules of Court. He argues the OIP should therefore be vacated.

City did not serve Israni with notice of its August 22, 2000 ex parte application for the OIP prior to the trial court's issuance of the OIP on that date. City served him with notice of the OIP on August 23. Israni correctly asserts he has federal and state constitutional rights to procedural due process, which generally include the right to notice and an opportunity to be heard before a person is deprived of a significant property interest. (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, § 7; *Sniadach v. Family Finance Corp.* (1969) 395 U.S. 337, 339-342 [89 S.Ct. 1820, 1821-1823, 23 L.Ed.2d 349]; *Blair v. Pitchess* (1971) 5 Cal.3d 258, 276-281 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; *Randone v. Appellate Department* (1971) 5 Cal.3d 536, 541, 547-552 [96 Cal.Rptr. 709, 488 P.2d 13].) In addition, California Rules of Court, rule 379(a) provides for notice to be given to an opposing party prior to an ex parte hearing.[3]

However, Israni received notice of, and an opportunity to be heard on, his challenge to the OIP *before its effective date*. On August 23, 2000, Israni was

___

[3]California Rules of Court, rule 379(a) states: "An application for an order shall not be made ex parte unless it appears by affidavit or declaration (1) that within a reasonable time before the application the party informed the opposing party or the opposing party's attorney when and where the application would be made; or (2) that the party in good faith attempted to inform the opposing party and the opposing party's attorney but was unable to do so,

served with a copy of the OIP, which was to be effective on August 31. He immediately filed an application challenging the OIP and the trial court stayed the OIP's effective date until the September 8 hearing. At that hearing, Israni had a meaningful opportunity to address the merits of the OIP. The trial court denied his application to vacate or stay the OIP but delayed its effective date until September 13. Therefore, Israni was not deprived of any significant property interest until at least September 13. Because Israni received notice and an opportunity to be heard before that date, he was not denied his constitutional rights to procedural due process. (Cf. *Bradshaw v. Park* (1994) 29 Cal.App.4th 1267, 1278 [34 Cal.Rptr.2d 872] ["Due process does not require a hearing at the initial stage or at any particular point of an administrative process so long as the requisite hearing is held before the final order becomes effective."]; *California Teachers Assn. v. Butte Community College Dist.* (1996) 48 Cal.App.4th 1293, 1306-1309 [56 Cal.Rptr.2d 269]; *Mihans v. Municipal Court* (1970) 7 Cal.App.3d 479, 484-489 [87 Cal.Rptr. 17].) Furthermore, although we assume City did not comply with California Rules of Court, rule 379(a), we conclude Israni was not prejudiced by not receiving notice prior to City's ex parte application for the OIP; he received notice of the OIP and a meaningful hearing prior to the OIP's effective date. Israni challenged the validity of the OIP under section 1255.410(c). Section 1255.440 provides: "If an order has been made under Section 1255.410 authorizing the plaintiff to take possession of property and the court subsequently determines that the conditions specified in Section 1255.410 for issuance of the order are not satisfied, the court shall vacate the order."

Therefore, Israni had the opportunity at the hearing to show that the OIP should not have initially been granted because section 1255.410's conditions were not satisfied. Had his showing convinced the trial court, it would have been required by section 1255.440 to vacate the OIP. In that event, the OIP would never have become effective and Israni could not have been deprived of any significant property interest. Israni effectively received a de novo hearing on the issuance of the OIP before its effective date. As a result, he was not denied his procedural due process rights and was not prejudiced by any violation of California Rules of Court, rule 379(a).

## III

### *Israni Has Standing to Challenge the OIP*

■ City argued at the September 8, 2000 trial court hearing that Israni did not have standing to challenge the OIP. Israni argued in his September

specifying the efforts made to inform them; or (3) that for reasons specified the party should not be required to inform the opposing party or the opposing party's attorney."

12 brief in support of the instant petition that he had standing to challenge the OIP on the ground that City lacked the requisite section 1255.410(c) urgent need and on other grounds. City admitted in its September 20 brief in opposition to the instant petition: "City of San Diego admits for purposes of this writ [petition] that [Israni] had standing to challenge the order for immediate pre-judgment possession." However, City in its October 10 supplemental brief argued that Israni as a nonpossessory owner did not have standing to challenge City's urgent need for the OIP under section 1255.410(c). We conclude City is deemed to have waived the lack of standing argument by its previous admission that Israni had standing to challenge the OIP. City's September 20 admission was not qualified as to the issues Israni raised in challenging the OIP. Because City's admission was made after Israni expressly asserted his standing to challenge City's section 1255.410(c) urgent need for the OIP, Israni has standing to challenge the OIP on all grounds, including whether the section 1255.410(c) urgent need condition for the OIP was satisfied by City.

In any event, we doubt that City is correct that a nonpossessory owner of property does not have standing to challenge a section 1255.410(c) order for immediate possession. Section 1255.440 requires a trial court to vacate an order for immediate possession if it finds that any of the conditions for immediate possession have not been satisfied. That statute does not limit challengers of immediate possession orders to occupants of the property. The 1975 Law Revision Commission Comment to section 1255.440 states: "Because the order for possession is issued following an ex parte application by the plaintiff, Section 1255.440 expressly authorizes the court to vacate the order for possession if it subsequently determines, *whether upon motion of the defendant or upon its own motion*, that the requirements of Section 1255.410 are not satisfied." (Cal. Law Revision Com. com., 19 West's Ann. Code Civ. Proc. (1982 ed.) foll. § 1255.440, p. 711, italics added.)

As a defendant in City's eminent domain action, Israni had standing to challenge the OIP on all grounds, including whether City satisfied the section 1255.410(c) urgent need condition.

IV

*Substantial Evidence Supports the Trial Court's Implied Finding That City Had an Urgent Need for Immediate Possession Within the Meaning of Section 1255.410(c)*

Israni contends City's assertion of an urgent need for the OIP under section 1255.410(c), in that it needed possession of the Property before the

lease expired at 12:00 a.m., September 15, 2000, to assure continued occupancy by VVSD, does not constitute urgent need as that phrase is used in this context. When the trial court continued the hearing to consider opposition to the OIP as issued, it made an implied finding under section 1255.410(c) that urgent need existed for the order of possession, although its effective date had not yet been established. This was a discretionary decision: "[I]f the court finds that the plaintiff has an urgent need for possession of the property . . . the court *may* make an order for possession of such property upon such notice . . . *as the court deems appropriate* under the circumstances of the case." (*Ibid.*, italics added.)

To analyze Israni's challenge to the ruling, we first set forth the standards for issuance of such an order, then apply them to the evidence before the trial court. The task of the appellate court is to determine whether substantial evidence, contradicted or uncontradicted, supports the conclusion reached by the trial court. (*City of Los Angeles v. Keck* (1971) 14 Cal.App.3d 920, 925-926 [92 Cal.Rptr. 599].)

Before that standard is applied, however, statutory construction of section 1255.410(c) is required. Where a trial court has made the determination that is on review solely upon the basis of its statutory interpretation as applied to undisputed facts, the interpretation and application of the statutory scheme to undisputed facts will be treated as a question of law subject to de novo review. (*Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951-952 [268 Cal.Rptr. 624] (*Rudd*).) The reviewing court will not be bound by the trial court's interpretation. The endeavor is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Ibid.*) We turn first to the words of the statute itself, seeking to give the words employed by the Legislature their usual and ordinary meaning. As particularly relevant here: "The language must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute [citation], and where possible the language should be read so as to conform to the spirit of the enactment. [Citation.]" (*Id.* at p. 952.) Where the plain language of the section is not determinative, legislative history may be consulted. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].)

Our research shows the meaning of the phrase "urgent need" in section 1255.410(c) is a question of first impression in California.[4] When this statutory phrase was first adopted in 1975, the Law Revision Commission did not explain its meaning. However, the Legislative Committee

---

[4]Our research shows this statutory phrase did not originate from any other states' eminent domain statutes or the Uniform (now Model) Eminent Domain Code. Although one

Comment—Assembly 1975 Addition explains that section 1255.410 sets forth the requirements and describes the contents of an order for possession of property prior to judgment, and sections 1255.420 to 1255.440 will govern the relief available from such an order for possession. (Legis. Com. com.—Assem. 1975 Addition, 19 West's Ann. Code Civ. Proc., *supra*, foll. § 1255.410, pp. 705-706.) The comment continues, "The issue of the plaintiff's need for possession prior to judgment is a matter that is incorporated in the provisions of Section 1255.420. Section 1255.410 does not affect any other prerequisite that may exist for taking possession of property [e.g., provision of relocation assistance]."[5] The comment continues, "[s]ubdivision (c) replaces the 'good cause' standard of prior law with the requirements that the plaintiff show urgent need and that the person in possession not be displaced or unreasonably affected." (Legis. Com. com.—Assem. 1975 Addition, 19 West's Ann. Code Civ. Proc., *supra*, foll. § 1255.410, pp. 705-706.)

 As this court stated in *Rudd, supra*, 219 Cal.App.3d 948, specific statutory language must be construed in the context of the statutory scheme of which it is a part, keeping in mind the policies and purposes of the statute. Both the subject matter of these sections and the legislative committee comment to section 1255.410 indicate that it and section 1255.420 are to be read together: "The issue of the plaintiff's need for possession prior to judgment is a matter that is incorporated in the provisions of Section 1255.420." (Legis. Com. com.—Assem. 1975 Addition, 19 West's Ann. Code Civ. Proc., *supra*, foll. § 1255.410, pp. 705-706.) Section 1255.420 includes these criteria for determining the relative substantial hardship to the plaintiff, as part of the overall determination if an OIP should be stayed due to substantial hardship to the defendant or occupant from an immediate taking: "The court may . . . [consider] all relevant facts (including the schedule or plan of operation for execution of the public improvement and the situation of the property with respect to such schedule or plan) . . . ."

The parties discuss possible interpretations of the "urgent need" phrase in section 1255.410(c), focusing on whether the word "urgent" connotes a

---

Wisconsin condemnation statute, Wisconsin Statutes section 32.21, uses the phrase "urgently needed" in reference to a state agency obtaining immediate possession of property being condemned, there are no reported cases interpreting that phrase or its application.

[5]In *Redevelopment Agency v. Gilmore* (1985) 38 Cal.3d 790, 800-801 [214 Cal.Rptr. 904, 700 P.2d 794], the Supreme Court concluded that since a landowner in California of property sought by a public agency is permanently deprived of all rights in that property when the agency exercises its option to deposit estimated value and obtain early possession for an intended public use, the "constitutional taking occurs no later than the moment at which the public agency obtains the right of early possession . . . . [¶] . . . Accordingly, 'just' compensation is the 'full and perfect' monetary equivalent of the fair market value of the land paid at the time the taking occurred."

quantity or measure of seriousness of the need, a temporal consideration, or both. To apply this statutory scheme to this set of undisputed facts, we first state that the meaning of the word "urgent" in this context includes at least a temporal need. An order for immediate possession under section 1255.410(c) permits the condemning authority to obtain possession earlier than 30 or 90 days after service of notice of the order of possession only if the need for possession is urgent; otherwise possession must await the passage of 30 or 90 days. By shortening the time only if the need is urgent, the section seems to contemplate that an urgent need is at least a temporal or immediate need.

However, we believe the urgency contemplated by the statutory scheme regarding possession prior to judgment may also include a substantive component related to the nature of the public necessity to be served by the taking, if the nature of the public necessity is reasonably related to the timing issue. In the absence of other stated criteria in the "urgent need" context, we believe it is appropriate and necessary to cross-reference the related section 1255.420 criteria for determining if an OIP should be stayed due to the relative substantial hardship to the parties from an immediate taking: "The court may . . . [consider] all relevant facts, (including the schedule or plan of operation for execution of the public improvement and the situation of the property with respect to such schedule or plan) . . . ."

We turn to the record to apply these principles. Here, the background facts include City's resolution of necessity for condemnation of the Property. As pertinent here, the Resolution states that the public interest, convenience and necessity of City require the acquisition of the Property and improvements to assure the continuation of a transitional housing facility consistent with City's general plan, as well as the Naval Training Center Reuse plan. The Property to be acquired was deemed "necessary for the operation, improvement and maintenance of the [VVSD Project], including but not limited to, *assuring the continued use and services at the property*." (Italics added.) Under section 1245.250, this Resolution conclusively establishes the public necessity for the taking. (§ 1240.030.) The Resolution also states that condemnation of the Property would "enhance the long term stability" of VVSD, and enable VVSD to expand its services and remain in operation in its present location.

In addition, the trial court had before it a declaration from City's appraiser, stating his opinion that the highest and best use of the Property was continued use "as is" of the buildings as a homeless center. VVSD's president and chief executive officer Al Pavich stated in his declaration that the Center had been operating at that location for 10 years, and it was in

accordance with City's acquisition of the Property to continue the present use. Pavich's later declaration in opposition to the application to vacate the OIP went into more detail about the operations of the Center and the fact that it had taken one year to obtain a conditional use permit for their operations. In light of that background, Pavich stated the Center could not continue to operate if it were forced to relocate temporarily. Moreover, Pavich stated that the human costs would be immeasurable if the VVSD were forced to suspend its operations, even temporarily, because the Center provided a stable environment to enable troubled veterans to turn their lives around. If the Center were forced to close its operations, it would jeopardize the rehabilitation work put in by veterans who used the Center's services. It would also jeopardize the Center's funding from various sources if it were forced to temporarily close the Center and suspend operations at the Property.

Pavich further stated that VVSD had not taken action to exercise its option to extend the term of its lease of the Property because since 1995, City had told the Center it would be allowed to remain there during the anticipated condemnation process. The record does not contain any indication of any other plans for the Property on Israni's part, presumably because of the effect of the anticipated condemnation proceedings, at least since February 2000 when City made its statutory offer to purchase the Property.

Based on the facts made known to the trial court, it had an ample basis on which to conclude that City had an ongoing need to provide these specific homeless services, which were urgently needed and which would be seriously disrupted by any change in possession of the Property. The use of the Property was in compliance with the homeless assistance element of the San Diego Naval Training Center reuse plan and contributed to the low and moderate income housing element of City's general plan. For purposes of this preliminary pretrial determination, the absence of a joint powers agreement between the Agency and City to pursue this particular land use does not affect the showing made by City of its urgent need for immediate possession of the Property. (See pt. VI. B., *post.*)

These planned uses of the Property are, by their very nature, emergency services and are therefore substantively supported by the Resolution for purposes of establishing an urgent need for the existing use of the Property. The record supports an inference that the delivery of homeless services must be done according to a schedule or plan of operation inherent in such a public necessity. (§ 1255.420.) Although the record does not disclose any immediate threat of eviction of VVSD, the fact that its lease was set to expire and had not been renewed provides sufficient evidence in this land

use context to support a determination of the City's urgent need for the immediate possession procedure, when considered in light of all the relevant circumstances. Something more than "good cause" was shown, as contemplated by the Legislative Committee Comment to section 1255.410. It is therefore not a decisive factor that the lease term did not expire until midnight on September 14, 2000, or that, technically, VVSD could not be forced to leave until September 15 or thereafter. Accordingly, the trial court could properly determine that City's urgent need for the OIP to retain VVSD's occupancy of the Property had already arisen before the lease expiration date of September 15.

We wish to stress that this record as a whole supports a finding of urgency under the statute, due to the stated need in the Resolution for continuation of the ongoing services. Nothing in this opinion is intended to suggest that the mere fact that a parcel of property sought to be condemned is suitable for the delivery of urgently needed public services makes it subject, in and of itself, to an urgency determination under section 1255.410 et seq.

Rather, under these particular circumstances, there is substantial evidence to support the trial court's determination that City had an urgent need for possession of the Property before the expiration date of the lease, because the nature of the services offered at the site were such that substantial lead time and warning would be needed to enable replacement services to be made available, and because the evidence strongly supported a need for continuity. Thus, the determination there was urgency here within the meaning of the statutory scheme is reasonably related to the nature of the public necessity to be served by the taking, which has an emergency or urgent character. It was not error to deny the application to vacate the order.

V

*There Was No Error or Abuse of Discretion in the Trial Court's Denial of Israni's Request for a Section 1255.420 Stay of the OIP*

■ As stated above, the trial court did not err in determining that the threshold requirement under section 1255.410 had been met, that "urgent need" supported the issuance of the OIP. The next issue before the trial court was whether there was substantial harm to Israni from the issuance of the order under section 1255.420. That section permits the trial court to stay the effective date of its order for immediate possession if it finds the defendant or property occupant will suffer substantial hardship by losing possession on the original OIP effective date. If such a finding is made, additional findings are required whether the condemning authority needs possession on that date

or whether it would suffer substantial hardship from an extension of that date, before the order may issue.

Israni contends the trial court erred by denying his request for a section 1255.420 stay of the OIP's effective date because he showed that, in his view, (1) he would be substantially harmed by the September 13, 2000 effective date of the OIP; (2) City did not need possession on that date; and (3) City would not be substantially harmed if it did not receive possession on that date. His theory is that the trial court erred by expressly finding his potential loss of the $635,000 tenant improvements portion of the condemnation award, pursuant to the provisions of the lease agreement, did not constitute a substantial hardship within the meaning of the statute.

In response, City argues the trial court was correct in its finding that an adverse effect of condemnation resulting from an owner's ancillary third party agreement, here the Lease Amendment, does not constitute a substantial hardship under section 1255.420. City reasons that Israni bargained with VVSD for the condemnation provision in the Lease Amendment and he should not be able to assert a substantial hardship from a pre-September 15 possession date so that he can obtain a windfall award of the value of tenant improvements made at VVSD's expense.

We have found no reported cases interpreting the phrase "substantial hardship" to the defendant in the context of section 1255.420.[6] We therefore turn to basic statutory construction rules. As stated in *Rudd, supra,* 219 Cal.App.3d 948, specific statutory language must be construed in the context of the statutory scheme of which it is a part, keeping in mind the policies and purposes of the statute. Section 1255.420 provides for relief from an order for immediate possession, which means that any substantial hardship determination pursuant to that section should be addressed to that particular time frame set for having possession taken at the time specified in the order. The section's Law Revision Commission comment states that the court may draft an appropriate order under the circumstances, such as allowing joint use of the Property or separate possession of portions of the property. The time for measuring just compensation for the property is also set for the time of possession, even though a damages evaluation is normally not made until any later trial proceedings. (§ 1260.220; see fn. 5, *ante.*)

In this case, the tenant improvements had been installed by VVSD during the previous 10-year lease period, at its expense. The record shows that

---

[6]Although the federal district court in *Grace Geothermal Corp. v. Northern California Power Agency* (N.D.Cal. 1985) 619 F.Supp. 964, 972-973, cites to section 1255.420 in a preliminary injunction analysis, it does not expand upon the meaning of the statutory language.

VVSD and the City anticipated that condemnation proceedings would be conducted before the time set for renewal of the lease. Nothing in the record suggests that Israni had other immediate plans for the Property or had changed his position with respect to the terms of the lease within recent years. Rather, nothing had changed since 1991 between the parties with respect to the terms of the lease concerning tenant improvements in the event of condemnation of the Property by a public entity. Israni was not in possession of the Property and was not using it, and instead bases his claims solely upon his interpretation of the lease provisions.

With these considerations in mind, we reject Israni's position that City should have timed the request for immediate possession to better protect his interests under the lease, to avoid imposing substantial hardship on him. We find no error in the trial court's finding that the operation of the lease provisions in this context did not amount to a substantial hardship to Israni. Israni had no clear entitlement to an interpretation of the lease in his favor to allow him compensation for tenant improvements that he had earlier acknowledged should go to VVSD in the event of condemnation. As more fully discussed in part VI, *post*, we have found no support in the record for his contention that the OIP was primarily intended to render a benefit to a private organization, the VVSD, and unfairly creates hardship for him. As shown by the Resolution, the public necessity findings pertained to the City and its duty to provide homeless services, not to a private organization's needs.

Our reading of the term "substantial hardship" as defined by section 1255.420 requires that such hardship, to justify a stay order, must have a specific relationship to the particular interval between the application for the OIP and its proposed effective date. Section 1255.420 does not appear to require or allow a determination that a substantial hardship to the property owner may arise out of indirect effects of existing contractual arrangements that do not depend mainly upon the effective date of the OIP. Here, the lease's condemnation provision awarding VVSD the value of its tenant improvements if VVSD loses possession of the Property during the lease term because of condemnation proceedings was not recently enacted or specifically designed to apply to the period that possession of the property was being litigated. In deciding the stay request at this preliminary stage of the proceedings, the trial court was not required to accept Israni's claim he would lose the value of VVSD's tenant improvements if the effective date of the OIP were set on or before the end of the lease term on September 14, 2000, nor that such a loss constituted a section 1255.420 substantial hardship.

Because of our conclusion that Israni's potential loss under the lease (subject to proof at trial) does not qualify as a substantial hardship as that

term is used in section 1255.420, it is not necessary to address the two remaining factors under the statute regarding the effect of a stay on City (did City need possession of the Property on or before September 15, and would City suffer a substantial hardship if a stay were issued). The trial court did not err or abuse its discretion in denying Israni's request for a section 1255.420 stay of the OIP.

## VI

*The Trial Court Properly Found Israni Did Not
Show a Reasonable Probability He Would Prevail on His
Challenge to City's Right to Take the Property*

■ Finally, Israni contends the trial court erred by finding he did not show a reasonable probability he would ultimately prevail on his challenge to City's right to take the Property. (§ 1255.430.)

### A

In support of his ex parte application for an order vacating or staying the effective date of the OIP, Israni argued that City did not have a right to take the Property under California's eminent domain statutes. He further argued there was a reasonable probability that his challenge to City's right to take would be successful, and therefore the trial court was required by section 1255.430 to issue a stay of the OIP's effective date until it ruled on the right to take issue. Israni argued that City was improperly exercising its eminent domain powers to acquire the Property for the benefit of VVSD, a private organization, and such an exercise was illegal. He alleged that City intended to transfer ownership of the Property to VVSD after condemnation proceedings were completed. He also argued that City did not have a public need for the Property and that City was not the de facto condemnor of the Property; rather, it was the Agency of City, which is an entity separate from City, and which had not adopted any resolution to condemn the Property. He argued that City's Resolution showed the Property was being acquired by eminent domain for purposes of facilitating the reuse of the Naval Training Center, which was a project of the Agency, and City had no right to acquire the Property in eminent domain for use by a different agency. Citing *Redevelopment Agency v. Norm's Slauson* (1985) 173 Cal.App.3d 1121, 1127 [219 Cal.Rptr. 365] (*Norm's Slauson*), he also argued City's Resolution was invalid because it merely "rubber stamped" City's prior arrangement with VVSD to condemn the Property for VVSD's benefit.

City opposed Israni's ex parte application, arguing in part that it was necessary to acquire the Property for the public benefit of ensuring the continued provision of services to the homeless population by VVSD.

At the September 8, 2000 hearing, City argued there was no evidence of any agreement or arrangement with VVSD prior to City's Resolution that it would be condemning the Property and transferring it to VVSD. City's attorney argued there was no evidence that City would not continue to own the Property after its condemnation, although City would not be precluded from transferring it in the future. In denying Israni's ex parte application, the trial court found: "While the court is aware that [Israni] challenges the right to take as an illegal benefit to a private organization and while the court retains an open mind on that issue, the court cannot at this point find that there is a reasonable probability [Israni] will prevail so as to stay the order under CCP section 1255.430."

B

In support of this petition, Israni asserts the trial court erred by denying his request for a section 1255.430 stay because it ignored evidence that City was "attempting to use the power of eminent domain for the private gain of the VVSD." Although Israni appears to concede that he does not have evidence at this stage of the eminent domain proceedings to show that City has a private benefit purpose, he argues his objections and allegations should suffice to show a reasonable probability that he will prevail on his challenge to City's right to take. However, we cannot conclude, as he does, that City's stated purpose for acquiring the Property actually shows a reasonable probability it should not have the right to take the Property in eminent domain. City has stated it is using its eminent domain power to acquire the Property to ensure that VVSD's homeless assistance operations continue thereon. City's Resolution and eminent domain complaint state that its acquisition of the Property was required by the public interest and necessity, for a public use. City's Resolution provided: "That the public interest, convenience and necessity of the City . . . require the acquisition of . . . [the Property] . . . to assure the continuation of a transitional housing facility consistent with the Homeless Assistance Element of the San Diego Naval Training Center Reuse Plan. Additionally, this acquisition contributes toward meeting the City's low and moderate income housing needs identified in the Housing Element of the General Plan pursuant to Government Code Section 65583(c)(1). [¶] . . . The acquisition of the [P]roperty and the improvements thereon, will enhance the long term stability of the provider, [VVSD], and will enable it to expand its services. . . . [S]aid acquisition will enable the provider to remain at its current location. . . . The specific provisions of the Homeless Assistance Element were developed as the result of negotiations between the City and the major providers of homeless services in San Diego. [¶] . . . [¶] . . . That the acquisitions sought herein are for a public use . . . ."

City's Resolution is conclusive evidence of City's public interest and necessity to acquire the Property. (§§ 1240.030; 1245.250, subd. (a).)[7] Acquisition of the Property by City for a public use is shown by its stated intent to fulfill, or contribute toward, the purposes of the Naval Training Center homeless assistance element and the housing element of its general plan. There is no evidence showing City intends to acquire the Property for VVSD's private benefit. At most, Pavich, VVSD's president, stated in his declaration: "Since 1995 the City has told us that we would be allowed to remain on the Property throughout the condemnation process." That statement does not establish that City necessarily intended to acquire the Property for VVSD's private benefit or that City had an agreement or arrangement with VVSD to condemn the Property for VVSD's private benefit. Furthermore, that statement alone does not establish that City's Resolution merely "rubber stamped" a prior agreement or arrangement with VVSD to condemn the Property.[8] (*Norm's Slauson, supra,* 173 Cal.App.3d at p. 1127.)

Absent evidence to the contrary, we must assume that City is acquiring the Property for the purposes stated in its Resolution and eminent domain complaint. One of these stated purposes was to "[contribute] toward meeting [its] low and moderate income housing needs identified in the Housing Element of the General Plan." Israni does not show that this was not a legitimate public purpose, nor that use of the Property pursuant to City's stated intent to allow VVSD to continue its homeless assistance operations on the Property would not materially contribute toward that public purpose. Such public use and purpose supports City's right to take the Property in eminent domain proceedings. Although Israni argues that City's other stated purpose of meeting the homeless assistance element of the San Diego Naval Training Center Reuse Plan is actually a public use or purpose of the Agency, *not* of City (or if it could be one of City's, it could be only through a joint powers agreement with the Agency that does not yet exist), we need not address this argument at this point because City's other public use and purpose of contributing toward the housing element of its general plan remains unrebutted by Israni.

Furthermore, although Israni appears to argue any transfer of the Property to a private party could only be for an illegitimate benefit, section 1240.120,

---

[7]Section 1245.250, subdivision (a) provides: "Except as otherwise provided by statute, a resolution of necessity adopted by the governing body of the public entity pursuant to this article conclusively establishes the matters referred to in Section 1240.030." Section 1240.030 provides: "The power of eminent domain may be exercised to acquire property for a proposed project only if all of the following are established: [¶] (a) The public interest and necessity require the project. [¶] (b) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury. [¶] (c) The property sought to be acquired is necessary for the project."

[8]Accordingly, we conclude *Norm's Slauson, supra,* 173 Cal.App.3d 1121, is inapposite to this case.

subdivision (b) provides: "[A] person may acquire property . . . with the intent to sell, lease, exchange, or otherwise dispose of the property, or an interest therein, subject to such reservations or restrictions as are necessary to protect or preserve the attractiveness, safety, and usefulness of the project." (See also *Huntington Park Redevelopment Agency v. Duncan* (1983) 142 Cal.App.3d 17, 26-27 [190 Cal.Rptr. 744].) Therefore, even if City intends to transfer the Property to VVSD after its condemnation, that transfer would not necessarily be deemed to be for a private benefit. It is Israni's burden to rebut the presumptions that City's acquisition of the Property, or any eventual transfer of the Property to VVSD, would not be for a legitimate public use or purpose.

We conclude Israni has not sufficiently shown at this point that there is any reasonable probability he will prevail on his challenges to City's right to take the Property. Therefore, the trial court properly denied Israni's request for a section 1255.430 stay of the effective date of the OIP. We express no opinion on the merits of the right to take issue as they may be presented at trial.

## DISPOSITION

The petition is denied. Each party is to bear its own costs of the writ proceeding.

Nares, J., concurred.

**McDONALD, J.,** Dissenting.—In my view there is no substantial evidence in the record of this case to support the trial court's implied finding that the City of San Diego (City) had an urgent need for immediate possession of Ashok Israni's property (the Property). (See Code Civ. Proc., § 1255.410, subd. (c).)[1] It is also my view that the trial court abused its discretion by denying Israni's request for a section 1255.420 stay of the order of immediate possession (OIP). I would grant the petition for writ of mandate and direct the trial court to vacate its order for immediate possession issued August 22, 2000.

The trial court issued the OIP under section 1255.410, subdivision (c) to be effective September 13, 2000. A showing of an urgent need for immediate possession is a condition to the issuance of the OIP under section 1255.410, subdivision (c). City did not show it had an urgent need for possession of the Property before September 15, 2000.

City's resolution authorizing condemnation of the Property stated that it was needed by City to assure the existence of a transitional housing facility

---

[1]All statutory references are to the Code of Civil Procedure.

in accordance with the homeless assistance element of the San Diego Naval Training Center Reuse Plan and to contribute to the low- and moderate-income housing element of City's general plan. The resolution also stated that condemnation of the Property would "enhance the long term stability" of the Vietnam Veterans of San Diego, Inc. (VVSD), enable VVSD to expand its services and remain in operation in its present location. City therefore wished to acquire title to the Property not only to satisfy the Naval Training Center Reuse Plan and contribute to City's general plan, but to assure that VVSD would remain an occupant of the Property. This conclusion is consistent with VVSD's statement that it did not exercise its option to extend the term of its lease of the Property because City assured it of continued occupancy of the Property after the September 14, 2000, end of the lease term; City's assurance was based on City's intent to condemn the Property.

The sole basis for City's assertion of an urgent need for the OIP under section 1255.410, subdivision (c) is that it needed possession of the Property to assure its continued occupancy by VVSD. There was no urgent need for City's possession of the Property to satisfy the San Diego Naval Training Center Reuse Plan or the housing element of City's general plan.

The meaning of the phrase "urgent need" in section 1255.410, subdivision (c) is a question of first impression in California. Furthermore, when this statutory phrase was first adopted in 1975, the Law Revision Commission did not explain its meaning. This statutory phrase did not originate from any other states' eminent domain statutes or the Uniform (now Model) Eminent Domain Code. Although one Wisconsin condemnation statute, Wisconsin Statutes section 32.21, uses the phrase "urgently needed" in reference to a state agency obtaining immediate possession of property being condemned, there are no reported cases interpreting that phrase or its application. There is no precedent that interprets the phrase "urgent need."

The parties discuss possible interpretations of the phrase, focusing on whether the word "urgent" connotes a quantity or seriousness of the need or a temporal consideration, or both. At the least, I interpret the word "urgent" in this context to mean at least a temporal need. An order for immediate possession under section 1255.410, subdivision (c) permits the condemning authority to obtain possession earlier than 30 or 90 days after service of notice of the order of possession only if the need for possession is urgent; otherwise possession must await the passage of 30 or 90 days. By shortening the time to obtain possession only if the need is urgent, section 1255.410,

subdivision (c) seems to contemplate that an urgent need is a temporal or immediate need.

However, it is unnecessary in this case to resolve any dispute as to the meaning of the word "urgent" in the context of section 1255.410, subdivision (c). The sole basis for City's assertion of an urgent need for possession of the Property was to assure the continued occupancy of the Property by VVSD. Until the end of the term of VVSD's lease with Israni, not only did City not have an urgent need, however defined, for possession; it had no need at all.

City did *not* have an urgent need for possession of the Property on or before September 14, 2000, because VVSD could not have been required to leave the Property until *after* that date. The lease term did not expire until midnight on September 14, 2000, and VVSD could not be forced to leave until September 15 or thereafter. Accordingly, City's urgent need for the OIP to retain VVSD's occupancy of the Property could not arise until September 15. Furthermore, until at least September 15, 2000, the use of the Property continued to be in compliance with the homeless assistance element of the San Diego Naval Training Center Reuse Plan and to contribute to the low- and moderate-income housing element of City's general plan, for neither of which was there any evidence of a temporal need. Therefore, there is no evidence to support an order for City's immediate possession of the Property prior to midnight on September 14, 2000, and the OIP effective prior to that time was unauthorized by section 1255.410, subdivision (c) and should be vacated.

The trial court erred by denying Israni's request for a section 1255.420 stay of the OIP's effective date because he showed: (1) he would be substantially harmed by the September 13, 2000, effective date of the OIP; (2) City did not need possession on that date; and (3) City would not be substantially harmed if it did not receive possession on that date. Section 1255.420 permits the trial court to stay the effective date of its order for immediate possession if it finds that any defendant or the property occupant will suffer substantial hardship by losing possession on the original OIP effective date, and the condemning authority does not need possession on that date and would not suffer substantial hardship by extending that date.

There are no reported cases interpreting the phrase "substantial hardship" in the context of section 1255.420. Israni asserts that the trial court erred by expressly finding his potential loss of the $635,000 tenant improvements portion of the condemnation award pursuant to the provisions of the lease agreement could not constitute a substantial hardship.

City argues that the trial court was correct in its finding that an adverse effect of condemnation resulting from an owner's ancillary third party agreement, here the lease agreement, cannot constitute a substantial hardship under section 1255.420. Israni bargained with VVSD for the condemnation provision in the lease agreement and arguably should not be able to assert a substantial hardship from a pre-September 15 possession date so that he can obtain a *windfall* award of the value of tenant improvements made at VVSD's expense. City's argument is not persuasive.

Under section 1255.420, a substantial hardship to the property owner does not necessarily have to arise out of the direct effect of loss of possession; it can also arise out of indirect effects of contractual arrangements affected by the effective date of the OIP, here, the lease's condemnation provision allocating to VVSD from the condemnation award the value of its tenant improvements if VVSD loses possession of the Property during the lease term because of condemnation proceedings. Israni would lose the value of VVSD's tenant improvements if the effective date of the OIP is on or before the end of the lease term on September 14, and that loss constitutes a section 1255.420 substantial hardship.

However, even if Israni's loss constitutes a substantial hardship, the two remaining factors regarding the effect of a section 1255.420 stay on City must be addressed. Did City need possession of the Property on or before September 14 and would *City* suffer a substantial hardship if a stay were issued? City did not need possession of the Property prior to the end of the term of the Israni-VVSD lease; its only justification for an immediate possession order was to assure the continued occupancy of the Property by VVSD. VVSD's occupancy of the Property could not be disturbed prior to September 15, 2000, and City's stated need could not therefore have arisen until that date. Furthermore, City has proffered no evidence that it would suffer substantial harm by delaying the effective date of the OIP.

The trial court should have extended the effective date of the OIP under section 1255.420.

Petitioner's petition for review by the Supreme Court was denied July 25, 2001. Brown, J., did not participate therein.