STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT EN-FORCEMENT DIVISION, Appellant,

v.

Paul BEANS, Appellee.

No. S–8322.

Supreme Court of Alaska.

Sept. 4, 1998.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Jim Kentch, Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

COMPTON, Justice.

## I. INTRODUCTION

The Child Support Enforcement Division (CSED) appeals the superior court's determination that AS 25.27.246, which provides for the suspension of delinquent child support obligors' driver's licenses, is unconstitutional. We affirm in part and reverse and remand in part.

## II. FACTS & PROCEEDINGS

Paul Beans is the father of Nathaniel Kokrine, born in May 1991. In 1993 CSED ordered Beans to pay $845 per month in child support and established an arrearage of $15,377.

In January 1996 CSED sent Beans a "Notice of Intent to Suspend or Deny the Issuance or Renewal of Driver's License." Beans asked to enter a payment agreement with CSED. CSED sent Beans a proposed agreement, to which he did not respond. In March 1997 CSED issued a default decision finding Beans not in substantial compliance with the support order. In April Beans moved the superior court to review CSED's decision. In May the superior court held a hearing at which the court expressed concerns about the constitutionality of AS 25.27.246. The superior court appointed counsel to represent Beans *pro bono* and ordered counsel to brief the constitutional issues potentially raised by AS 25.27.246.

The court stayed further licensing action pending resolution of the constitutional issues.

In June Beans moved for summary judgment, arguing that AS 25.27.246 violated his rights to substantive due process, procedural due process, and equal protection of law. The superior court granted this motion. It held that (1) the statute violated Beans's substantive due process rights because it was not rational; (2) the statute violated Beans's procedural due process rights because it denied him a jury trial; and (3) the statute violated Beans's equal protection rights because it did not contain a "best efforts" defense like that in a similar statute dealing with occupational licenses. This appeal followed.[1]

## III. STATUTORY BACKGROUND

Alaska Statute 25.27.246 permits CSED to take adverse action against a delinquent child support obligor's driver's license. It requires CSED to maintain a list of obligors who are not in substantial compliance with support orders and to whom CSED has sent a notice of arrearages at least sixty days before it places them on the list. *See* AS 25.27.246(a). CSED must notify each person on the list that their driver's license will be suspended in 150 days and will not be reissued unless they obtain a release from CSED. *See* AS 25.27.246(b).

Licensees may request review of their inclusion on the list. *See* AS 25.27.246(e)-(f). CSED must release a licensee from the list if any of the following conditions is met: (1) the licensee is found to be in substantial compliance with the support order; (2) the licensee is in substantial compliance with a payment agreement negotiated with CSED; (3) the licensee obtains a judicial finding of substantial compliance; or (4) CSED or judicial review is not completed within the 150–day period before the licensee's license is suspended, through no fault of the licensee. *See* AS 25.27.246(f).

---

1. The court awarded Beans attorney's fees. Both parties have disputed aspects of this award on appeal but, because we reverse on the merits, Beans is no longer the prevailing party, and we thus reverse the fee award as a matter of course without needing to address the parties' arguments regarding the merits of that award.

Following administrative review, a licensee may request judicial relief from CSED's decision. *See* AS 25.27.246(i). Alaska Statute 25.27.246(i) limits the court's review to three questions: "(1) whether there is a support order or a payment schedule on arrearages; (2) whether the petitioner is the obligor covered by the support order; and (3) whether the obligor is in substantial compliance with the support order or payment schedule."

## IV. STANDARD OF REVIEW

▮▮▮▮ We review questions of constitutional law *de novo*. *See, e.g., Lantz v. Lantz*, 845 P.2d 429, 431 n. 1 (Alaska 1993). We will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Wright v. Black*, 856 P.2d 477, 479 (Alaska 1993).

## V. DISCUSSION

A. *Alaska Statute 25.27.246 Does Not Violate Beans's Right to Substantive Due Process.*

Article I, section seven of the Alaska Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." Substantive due process, we have explained,

is denied when a legislative enactment has no reasonable relationship to a legitimate governmental purpose. It is not a court's role to decide whether a particular statute or ordinance is a wise one.... The constitutional guarantee of substantive due process assures only that a legislative body's decision is not arbitrary but instead based on some rational policy.

... The party claiming a denial of substantive due process has the burden of demonstrating that no rational basis for the challenged legislation exists. This burden is a heavy one, for if any conceivable legitimate public policy for the enactment is apparent on its face or is offered by those defending the enactment, the opponents of the measure must disprove the factual basis for such a justification.

*Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974) (footnote omitted).

CSED clearly articulates a legitimate public policy for targeting the driver's licenses of delinquent obligors: the State needs to collect child support from all obligors, whether they are subject to income withholding or not. The threat of driver's license suspension is a particularly effective enforcement tool against those obligors who resist income withholding. Beans has not disproved this contention, as required by *Concerned Citizens of South Kenai Peninsula.*

Beans first argues that license revocation makes it more difficult for an obligor to earn the money to pay child support. Because this effect is contradictory to the State's asserted desire to collect child support, argues Beans, the statute is arbitrary. But Beans misses the point of the statute: an obligor who is willing to pay child support will not lose his or her license. As soon as an obligor enters into and begins to comply with a payment agreement negotiated under AS 25.27.246(f)(1) then, under subsection (f), CSED must release the obligor's license.

Beans next suggests that the lack of relationship between the sanction (forfeiting a driver's license) and Beans's underlying conduct makes AS 25.27.246 arbitrary. This argument focuses on the wrong relationship entirely. Whether there is a direct relationship between Beans's underlying conduct and the potential sanction has little or nothing to do with whether the sanction is particularly effective against a certain class of delinquent obligors. It is this particular effectiveness that makes the sanction of losing a driver's license rational.

▮▮▮ Beans argues that, because CSED only pursues licensing action against delinquent obligors whose former spouses have used CSED's collection services, the authorizing statute has no rational basis. Beans provides no authority for the proposition that this method of selection renders a statute unconstitutional. CSED responds that "[a] statute is not arbitrary ... merely because the enforcement tool provided by that statute is used only in those cases in which the state's enforcement mechanism has been triggered." CSED's position is more persuasive. It is not irrational to limit CSED's

enforcement efforts to cases in which CSED is already implicated or in which its aid is requested.

Finally, Beans argues that the statute does not distinguish between obligors who are avoiding payment and obligors who simply cannot pay. It is true that the statute does not explicitly draw that distinction, and we agree that such a distinction is necessary for the statute to satisfy the requirements of substantive due process. The statute, however, provides CSED with the flexibility to draw a distinction between obligors who are unwilling to pay and obligors who are unable to pay, as follows: CSED must release an obligor's license if the obligor is in substantial compliance with a payment schedule negotiated with CSED under subsection (f)(1). The statute does not circumscribe CSED's authority to negotiate such a payment schedule. In order to comport with the requirements of due process, CSED is simply required to exercise that authority to negotiate a payment schedule on arrearages that is within an obligor's ability to pay.[2]

■ This court has explained that "[a] statute may be unconstitutional either on its face or as applied. A statute is facially unconstitutional if 'no set of circumstances exists under which the Act would be valid.'" *Javed v. State, Dep't of Public Safety*, 921 P.2d 620, 625 (Alaska 1996) (quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) and citing *Gilmore v. Alaska Workers' Comp. Bd.*, 882 P.2d 922, 929 n. 17 (Alaska 1994)). Furthermore, AS 01.10.030 requires that any statute that does not contain a severability clause (which AS 25.27.246 does not appear to contain) be construed as though it contained the following language:

If any provision of this Act, or the application thereof to any person or circumstance is held invalid, the remainder of this Act and the application to other persons or circumstances shall not be affected thereby.

If AS 25.27.246 were applied so as to take away the license of an obligor who was unable to pay child support, it would be unconstitutional as applied in that case. At that point there would be no rational connection between the deprivation of the license and the State's goal of collecting child support. CSED's flexibility in negotiating payment plans, however, ensures that the statute need not be applied in such a manner; it is not unconstitutional on its face. Beans does not allege that CSED applied the statute to Beans in such a manner.

■■ We note that AS 25.27.246(i) purports to limit the grounds on which judicial relief may be requested, and does not explicitly include inability to pay. This is, of course, ineffective to prevent a litigant from challenging an unconstitutional application of the statute. Subsection (i) cannot be applied to prevent a litigant from seeking judicial relief based on inability to pay. With that limitation, subsection (i) passes constitutional muster. We read out of subsection (i) only the language purporting to limit judicial review to the determination of the three enumerated issues. In seeking relief on the basis of inability to pay, the obligor will bear the burden of proving his or her inability to pay by a preponderance of the evidence. *See Johansen v. State*, 491 P.2d 759, 766–67 (Alaska 1971) (placing this burden on the obligor in an analogous case involving civil contempt).

2. We note that AS 25.27.246(e) authorizes and requires CSED to establish review procedures to "allow a licensee to have the underlying arrearages and relevant defenses investigated, ... or to provide a licensee with assistance in the establishment of a payment schedule on arrearages if the circumstances warrant." As we read ability to pay into this section as a constitutionally required defense, subsection (c) necessarily applies to this defense.

We also note that any current court-ordered support was presumably within the obligor's ability to pay when ordered under Alaska Civil Rule 90.3. It is only arrearages that may, in cumulation with current payments, be beyond the ability of the obligor to pay. Of course, if the obligor's circumstances change, such that a prospective modification of an outstanding support order would be appropriate, no provision in the statute would bar the court from staying licensing action pending a decision on a modification motion.

**B.** *Alaska Statute 25.27.246 Does Not Violate Beans's Right to Equal Protection.*

■ Alaska Statute 25.27.244 provides for the suspension of occupational licenses for failure to pay child support. Alaska Statutes 25.27.244 and 25.27.246 both provide that obligors may avoid losing the licenses at issue if they are in "substantial compliance" with a support order or payment schedule. Alaska Statute 25.27.244(s)(6)(C)[3] (Supp.1997) includes in the definition of "substantial compliance" obligors who are making their "best efforts possible under the ... circumstances." The analogous subsection of AS 25.27.246 (the statute at issue in the instant case) does not include such a provision. Beans argues that, because of this distinction, AS 25.27.246 violates Alaska's Equal Protection Clause.

We have determined that AS 25.27.246 would be unconstitutional as applied if used to revoke the license of an individual incapable of paying the demanded support. That determination moots this issue. CSED may not require, in payment-schedule negotiations, payments beyond the "best efforts" of the obligor.[4]

**C.** *Alaska Statute 25.27.246 Does Not Unconstitutionally Deny Beans the Right to a Jury Trial.*

■ In disputing whether obligors are entitled to have a jury decide their ability to pay, Beans and CSED focus on the character of the license-revocation sanction. Beans argues that suspending his license until he complies with a support order or payment plan is punitive, and thus criminal in nature, and that the Alaska Constitution therefore entitles him to a jury trial.[5] CSED argues that the sanction is remedial, and thus civil in nature, so that Beans is not entitled to a jury trial.

In *Johansen v. State*, 491 P.2d 759, 762–67 (Alaska 1971), we decided whether imprisonment for "civil" contempt, to coerce an obligor to comply with a child support order, triggered a right to a jury trial, and other criminal-procedural protections, on the issue of ability to pay. After analyzing the history and theory of contempt, we concluded that "traditional contempt doctrine cannot satisfactorily answer whether child support contempt hearings are 'criminal' or 'civil' in nature." *Id.* at 767. Treating the case as a hybrid, we held that imprisonment to coerce payment triggers a right to a jury trial on ability to pay, but does not trigger any other criminal-procedural protections. *See id.* at 766–67. We did not rely on labels, but "instead looked to a balancing of the parties' interests to determine what procedure [to] follow[,] ... draw[ing] from both sides of the law." *Id.* at 767. We said that we had no doubt that "further procedural questions will arise in future cases," and promised to "continue to weigh the interests as we have done

**3.** The legislature added this "best efforts" provision to subsection (q)(6), effective July 1, 1997. *See* Ch. 87, § 117, SLA 1997. It was then called AS 25.27.244(q)(6)(C). This is the numbering to which the superior court referred in its August 7, 1997, summary judgment order. The 1997 amendments also added two new subsections to AS 25.27.244 concerning commercial fishing licenses, effective January 1, 1998. *See* Ch. 87, § 118, SLA 1997. The revisor of statutes relettered section .244 so that these new subsections became subsections (q) and (r), and the definitions were relettered from (q) to (s), so that the definition of "substantial compliance" at (q)(6) became (s)(6), effective January 1, 1998. *See* AS 25.27.244, Revisor's notes, at 256 (Supp.1997). The various 1997 amendments, finally, automatically expire on July 1, 1999. *See* Ch. 87, § 148(c), SLA 1997. Unless the legislature acts further, the "best efforts" provision, now AS 25.27.244(s)(6)(C), will be repealed on that date, and the definition of "substantial compliance"

that was relettered as AS 25.27.244(s)(6) on January 1, 1998, will return to being lettered AS 25.27.244(q)(6).

**4.** We note that the language concerning the "best efforts" defense contained in AS 25.27.244(s)(6)(C) (Supp.1997) is subject to a delayed amendment, effective July 1, 1999, that would eliminate that language. *See* supra note 3. Our decision today, however, that the constitution requires that judicial review of an obligor's ability to pay be available prior to a license revocation, is and will remain equally applicable in the context of a professional-license revocation.

**5.** Article I, section 11 of Alaska's Constitution provides in part that "[i]n all criminal prosecutions, the accused shall have the right to a ... trial[ ] by an impartial jury."

here." *Id.*[6] This is obviously such a case, and so we must focus on the real interests affected by the procedural choice it presents.

It is important to remember that, as we discussed in Part V.A above, the Alaska Constitution requires that an obligor who cannot negotiate a feasible payment schedule with CSED, and who insists that CSED is demanding higher payments than he or she can really make, have the right to have a judge review the issue of ability to pay. The question that Beans's jury-trial claim thus raises is whether our constitution—as precedent, policy, and reason guide us to interpret it—requires not only judicial review of ability to pay, but the further safeguard of the right to invoke a jury's judgment to settle the issue.

Beans makes a strong argument from precedent that it does. He asks us to combine the rule of *Johansen*—that a threat of imprisonment to coerce support payments entitles an obligor to have a jury decide whether he or she really can afford to pay—with our definition of a "criminal prosecution" for purposes of the right to a jury trial. *See Baker v. City of Fairbanks*, 471 P.2d 386, 401–02 & nn.28–29 (Alaska 1970). That definition is not limited to proceedings that may yield incarceration or heavy fines; it also includes those that may result in "the loss of a valuable license, such as a driver's license." *Id.* at 402. Beans's argument has obvious force: one has a right to a jury trial before being imprisoned to coerce payment, and we have

treated loss of a driver's license the same as imprisonment for purposes of the right to jury trial in criminal prosecutions. It might be formalistic to deem the proceeding here "civil" or "administrative," rather than "criminal," and therefore deny Beans the right to a jury trial.

While we would need to extend *Baker* and *Johansen* only slightly to encompass this case, we do not think that the constitution requires that step. The sanction here substantively differs from those in *Baker* and *Johansen*. The differences make judicial review a constitutionally adequate safeguard in those cases, hopefully few, in which an obligor believes that CSED is insisting on a payment schedule beyond his or her ability to pay.

Unlike Mr. Johansen, obligors in Beans's position only face license suspension, not imprisonment. And they differ from people facing license revocations in "criminal prosecutions," as envisioned in *Baker*, in three ways. First, they do not face the collateral consequences of a formally "criminal" conviction—i.e., the stigma of being labeled a "criminal," and the possibilities of trouble in finding employment or perhaps credit. *See Baker*, 471 P.2d at 395–96.[7] Second, they face the loss of their licenses only to coerce them to meet an obligation, not to punish them for past misconduct.[8] The distinction between coercive and punitive aims is not

---

**6.** *See also Champion v. State, Dep't of Pub. Safety*, 721 P.2d 131, 133 (Alaska 1986) ("The fact that [an administrative license-revocation] proceeding is civil is not determinative of the applicability of [procedural] protections [created for criminal drunk-driving prosecutions]. We have avoided relying on formalistic categorizations of proceedings as 'criminal' and 'civil' when determining if strict due process safeguards are required.").

**7.** *See also State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 537 (Alaska 1980) (holding that large fines did not make a nominally civil enforcement action a "criminal prosecution" under *Baker* in part because the defendant firm did not face the collateral consequences of a criminal conviction).

**8.** We did not specify in *Baker* that, for potential loss of a license to make a proceeding a "criminal prosecution," the revocation must serve to punish the licensee for past misconduct. But that is the implicit *sine qua non* of a "criminal prosecution." We also noted in *Baker* that the

right to a jury trial does not extend to "administrative proceedings where lawful criteria other than criminality are a proper concern in protecting public welfare and safety, as the basis of revocation ... [is] that the individual is not fit to be licensed, apart from considerations only of guilt or innocence of crime." *Baker v. City of Fairbanks*, 471 P.2d 386, 402 n. 28 (Alaska 1970).

The revocation here has nothing to do with whether Beans is fit to drive, or threatens public welfare and safety. It serves a different end than either a classic "criminal" revocation (i.e., punishment), or a fitness-based administrative revocation (i.e., public safety). Its aim is to coerce future performance of an obligation unrelated to driving. Its purpose falls between that for which *Baker* expressly requires a jury trial, and that for which *Baker* expressly states that a jury trial is not required, and so we must look beyond *Baker* to resolve this appeal.

metaphysical: unlike someone whose license a court is about to revoke in order to punish them for past misconduct, Beans can still do something about his impending fate. He can convince either CSED or a judge that some specific amount is as much as he can reasonably pay, and then promise to begin paying that amount. Third, unlike criminal or punitive civil cases, child-support proceedings do not only vindicate a general social interest in law enforcement. Granting additional safeguards to delinquent obligors also risks impairing the compelling practical and moral interests of the specific individuals—i.e., children and custodial parents—to whom the obligors have allegedly not fulfilled their duty.

The sanction that delinquent obligors face under AS 25.27.246 is not as severe as that in *Johansen.* It has fewer collateral consequences and is less inevitable than that in *Baker.* Of course, the contemnor in *Johansen* could also have avoided prison by paying. Although we held that Johansen had a right to a jury trial, we denied him other criminal-procedural protections. *See Johansen,* 491 P.2d at 766. In so doing, however, we did not rely uncritically on the classic rationale that he did not need those protections because he could simply avoid imprisonment by paying. Indeed, we noted that circular reasoning is a "serious problem inherent in the civil contempt [i.e., coercive-not-punitive] doctrine." *Id.* at 765. That doctrine rests on one key belief:

> [C]ivil contemnors do not need criminal procedural safeguards since they are not placed under the criminal sanction of a fixed sentence; that is, they "carry the keys of their prison in their own pockets."

However, this may not be true:

> ... The contemnor may ... be incapable of [paying], *yet the determination of [that] fact[ ] is made without criminal safeguards even though imprisonment*

*hinges on the outcome of that determination.*

*Id.* (quoting *In re Nevitt,* 117 F. 448, 461 (8th Cir.1902), and Comment, *The Coercive Function of Civil Contempt,* 33 U. Chi. L.Rev. 120, 125 (1965) [hereinafter Comment, *Coercive Function* ] ) (alterations added).

The circularity problem is as follows. We are choosing *who* should ultimately decide whether an obligor can pay—judge or jury. If an obligor in fact cannot pay, then license revocation is not in any meaningful way "coercive." Whatever CSED's intent, you cannot "coerce" blood from a stone. To rely on the coercive-not-punitive rationale is partly to presume the *answer* to the ability-to-pay question while purporting only to decide *who* should answer that question. It is like saying, "presuming that you are able to pay, the sanction is only coercive, and therefore you do not need the safeguard of a jury to decide whether you are able to pay." This danger of circular reasoning led us in *Johansen* to note that

> [a] better rationale for denying procedural safeguards rests on the position of the plaintiff. In criminal contempt ... the granting of procedural safeguards does not conflict with the rights of any individual. "But granting additional safeguards to the defendant in a civil contempt proceeding is directly opposed to the interests of the complainant to whom the defendant owes a duty by reason of a prior judicial decree."

*Id.* (quoting Comment, *Coercive Function,* at 125).[9]

Focusing instead on the undeniably weighty interests of obligors' children, and those childrens' custodial parents, we conclude that the differences between this sanction and the sanctions in *Johansen* and *Baker* tip the scale against a right to a jury trial. Beans's right to have a judge review CSED's determination that it is not trying to coerce him to pay more than he truly can pay is

---

9. The coercive-not-punitive rationale, however, is not *wholly* circular. There is, hypothetically, some set of cases in which a judge will uphold CSED's demands where a jury would not. In those cases, the option of meeting CSED's demands by increasing one's payments, or one's ability to pay, will not be *impossible,* like legally escaping a prison sentence based on a valid

conviction. It will simply require substantial effort—more effort than CSED could have convinced a jury that it was reasonable or fair to demand. Although the coercive-not-punitive rationale thus has some substance, we prefer to emphasize the interests of obligors' children and those children's custodial parents.

constitutionally sufficient. In the classic justification for coercive imprisonment, contemnors "carry the keys of their prison in their own pockets." *In re Nevitt,* 117 F. at 461 (quoted in *Johansen,* 491 P.2d at 765). CSED believes that obligors like Beans carry the keys to their cars in their own pockets. Since we are only concerned with the keys to a car, not to a prison cell, it is enough that obligors can have a judge review their claims that they do not in fact possess those keys.

## VI. *CONCLUSION*

We AFFIRM only to the extent that we find AS 25.27.246(i) to be ineffective to prevent a litigant from seeking judicial relief based on inability to pay. Otherwise, we REVERSE and REMAND for further proceedings consistent with this opinion.