103 P.3d 257 (2004)
Greg AMUNRUD, Appellant,
v.
BOARD OF APPEALS and the Department of Social and Health Services, State of Washington, Respondents.
No. 52910-2-I.
Court of Appeals of Washington, Division 1.
December 27, 2004.
*258 Robert H. Stevenson, Attorney at Law, Seattle, WA, for Appellant.
Lianne S. Malloy, Assistant Attorney General, Olympia, WA, for Respondents.
BAKER, J.
Gregory Amunrud appeals a decision affirming the Department of Social and Health Services (DSHS) Division of Child Support's (DCS) revocation of his driver's license as a violation of his Fourteenth Amendment substantive right to a livelihood. He also claims that the process used to revoke his license violated his procedural due process rights, and argues that his right to privacy was invaded by DSHS's ability to obtain and disclose information about child support obligors. Because Amunrud fails to prove that any of his rights were violated, we affirm.
Amunrud fell at least six months behind in his child support payments, owing $16,255.00. On Amunrud's behalf, the King County Prosecutor filed a petition for modification of child support, requesting a reduction in his *259 monthly obligation. Following a hearing at which Amunrud appeared, a court commissioner rejected the request and instead increased Amunrud's obligation. Soon after, DCS initiated a license suspension action by sending Amunrud a "Notice of Noncompliance and Intent to Suspend Licenses." Amunrud requested and received an administrative hearing where he objected to the suspension of his license. The hearing officer determined that Amunrud was the noncustodial parent, he was required to pay child support, and he was more than six months in arrears. Amunrud appealed this decision and an administrative law judge affirmed the hearing officer's conclusions. Amunrud then appealed to superior court, which affirmed the decision.

I.
We review a challenge to a statute's constitutionality de novo.[1]
The due process clause of the Fourteenth Amendment of the United States Constitution states that no state shall "deprive any person of life, liberty, or property, without due process of law...."[2] The Washington State Constitution provides equal, but not greater due process protection.[3]

Substantive Due Process
Amunrud argues that the right to earn a livelihood is a fundamental right and if state action denies a citizen of that right, the validity of that action should be subject to strict scrutiny. But the United States Supreme Court has applied a rational basis test, rather than strict scrutiny, in cases involving the revocation of or the refusal to grant a person's professional license. In Dittman v. California,[4] the Ninth Circuit explained that the United States Supreme Court "has never held that the `right' to pursue a profession is a fundamental right, such that any state-sponsored barriers to entry would be subject to strict scrutiny."[5]
Moreover, the Washington Supreme Court has consistently applied the rational basis test in cases where a license was suspended or revoked. For example, in In re Kindschi,[6] our Supreme Court applied a rational basis test to the State's suspension of a doctor's license to practice medicine for eight months.[7] The court also applied a rational basis test to an equal protection claim by a provisional teacher whose contract was not renewed because he lived outside the school district.[8]
To pass a rational basis test, "the challenged law must be rationally related to a legitimate state interest."[9] Legislation is presumed constitutional unless the challenging party proves it unconstitutional beyond a reasonable doubt.[10] The rational basis test does not require that the statute achieve its goal in the most effective way.[11] Moreover, the statute does not need to be logically consistent with its purpose in every respect.[12] A rational relationship may be found if "there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to *260 correct it."[13] When determining if a rational relationship exists, "the court may assume the existence of any necessary state of facts which it can reasonably conceive."[14]
Amunrud argues that no rational relationship exists between revocation of a driver's license and failure to pay child support. We disagree. In State, Department of Revenue, Child Support Enforcement Division v. Beans,[15] the Alaska Supreme Court noted that the State articulated a legitimate reason for targeting the driver's license of obligors delinquent in their child support:[16]
[T]he State needs to collect child support from all obligors, whether they are subject to income withholding or not. The threat of driver's license suspension is a particularly effective enforcement tool against those obligors who resist income withholding.[[17]]
The appellant in Beans argued that the statute was arbitrary because revoking his license made it more difficult for him to pay child support, contrary to the stated purpose of the statute.[18] The Alaska court rejected this argument explaining that "an obligor who is willing to pay child support will not lose his or her license."[19] We agree.
Beans also argued that the lack of a relationship between the sanction and his underlying conduct made the statute arbitrary.[20] The court rejected this argument, stating that "[w]hether there is a direct relationship between Beans's underlying conduct and the potential sanction has little or nothing to do with whether the sanction is particularly effective against a certain class of delinquent obligors."[21] The court concluded that "[i]t is the particular effectiveness that makes the sanction of losing a driver's license rational."[22]
We agree with the Alaska Supreme Court in concluding that the sanction and the underlying conduct need not be directly related, but instead must only be rationally related. The State has met this burden by providing evidence that license suspension, or the threat of license suspension, has proven an effective support enforcement tool in Washington. According to a DSHS publication, the DCS "received over $48.5 million in voluntary payments as a result of the license suspension program" from October 2001 to September 2003. To test effectiveness of the program, "DCS compared collections on [cases where DCS initiated a license suspension action] for six months before and six months after the license suspension activity." The test revealed that "collections increased more than 300% on the cases against which DCS took a license suspension action." Because the threat of license suspension is an effective tool, it is rationally related to the problem of delinquent obligors.
A federal court provides us with another reason why license suspensions are rationally related to this problem. In Thompson v. Ellenbecker,[23] the United States District Court explained that by placing a restriction on an obligor's driver license, the State is able to gain more current information, such as current address of the obligor parent, when the obligor seeks to renew his or her license.[24]
We hold that the statute does not violate Amunrud's right to substantive due process.

Procedural Due Process
Amunrud argues that he was denied his procedural due process rights because he was not afforded an opportunity to show that he is an adequate driver and that his ability to drive is unimpaired. But this procedural *261 due process argument is really a substantive due process argument. The underlying substantive due process argument is that the State cannot take away Amunrud's license unless he is not an adequate driver or his ability is somehow impaired. We have already rejected this assertion.
Once the substantive due process argument is stripped away, Amunrud is left without much to challenge about procedural due process. He was given fair notice. He received a fair hearing before an administrative law judge, he filed a petition for review with the Board of Appeals for DSHS, and he appealed to King County Superior Court.
Amunrud also relies on the recent case of City of Redmond v. Moore.[25] In Moore, our Supreme Court held that two license suspension statutes, RCW 46.20.289 and.324(1), violated due process.[26] The court concluded that the statutes were "contrary to the guaranty of due process because they [did] not provide adequate procedural safeguards to ensure against the erroneous deprivation of a driver's interest in the continued use and possession of his or her driver's license."[27]
Unlike the defendants in Moore, Amunrud asked for and received an administrative hearing. It is true that during the administrative hearing Amunrud was restricted to arguing "(a) [w]hether the person named in the child support order is the noncustodial parent (NCP); (b) [w]hether the NCP is required to pay child support under a child support order; and (c) [w]hether the NCP is at least six months in arrears."[28] But if Amunrud believed he could not pay the child support amount as ordered by the courts, he had the option to initiate a modification proceeding to examine the correct amount of child support that should be paid. In fact, through the King County Prosecutor, he initiated such a proceeding. Although he may not have been pleased with the results of the hearing because the court ordered his payments increased rather than reduced, the important fact for our analysis is that the procedure was available to him. Furthermore, although we recognize that Amunrud could not present his constitutional arguments in the administrative hearing, he has been able to appeal the administrative decision to the courts. During this judicial review, he is able to present his constitutional arguments.[29] Therefore, we conclude that Moore is inapposite and Amunrud's right to procedural due process was not violated.
Amunrud next argues that RCW 74.20A.360 and RCW 26.23.120 violate his right to privacy under the Washington State Constitution. RCW 74.20A.360 authorizes DSHS to obtain information about child support obligors from third party sources, such as tax and revenue records, employment security records, records held by financial institutions, and records of professional licenses. RCW 26.23.120 authorizes DSHS to disclose this information under appropriate circumstances.
Washington law is clear that "[a] person may not urge the unconstitutionality of a statute unless he is harmfully affected by the particular feature of the statute alleged to be violative of the constitution."[30] Moreover, "[o]ne who challenges the constitutionality of a statute must claim infringement of an interest particular and personal to himself, as distinguished from a cause of dissatisfaction with the general framework of the statute."[31]
Amunrud does not allege he was harmed by DSHS's ability to obtain or disclose information under RCW 74.20A.360 and RCW 26.23.120. He does not claim that DSHS used its powers under RCW 74.20A.360 to obtain any information about him from third-party *262 sources, nor does he allege that DSHS disclosed any information concerning him under RCW 26.23.120.
Because Amunrud does not claim a personal infringement of his privacy, he does not have standing to challenge the constitutionality of these statutes.
We deny Amunrud's request for attorney fees.
AFFIRMED.
WE CONCUR: BECKER and KENNEDY, JJ.
NOTES
[1] State ex rel. Pub. Disclosure Comm'n v. 119 Vote No! Comm., 135 Wash.2d 618, 623, 957 P.2d 691 (1998).
[2] U.S. Const. amend. XIV, § 1.
[3] In re Personal Restraint of Dyer, 143 Wash.2d 384, 394, 20 P.3d 907 (2001) (citing State v. Lee, 135 Wash.2d 369, 387, 957 P.2d 741 (1998)).
[4] 191 F.3d 1020 (9th Cir.1999).
[5] Dittman, 191 F.3d at 1031 n. 5.
[6] 52 Wash.2d 8, 319 P.2d 824 (1958).
[7] Kindschi, 52 Wash.2d at 9, 11-12, 319 P.2d 824 (citing Schware v. Bd. of Bar Examiners of New Mexico, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957)).
[8] Meyers v. Newport Consol. Joint Sch. Dist. No. 56-415, 31 Wash.App. 145, 153, 639 P.2d 853 (1982).
[9] Seeley v. State, 132 Wash.2d 776, 795, 940 P.2d 604 (1997).
[10] Seeley, 132 Wash.2d at 795, 940 P.2d 604.
[11] Seeley, 132 Wash.2d at 795, 940 P.2d 604.
[12] Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 487-88, 75 S.Ct. 461, 99 L.Ed. 563 (1955).
[13] Williamson, 348 U.S. at 488, 75 S.Ct. 461.
[14] Seeley, 132 Wash.2d at 795, 940 P.2d 604.
[15] 965 P.2d 725 (1998).
[16] Beans, 965 P.2d at 727.
[17] Beans, 965 P.2d at 727.
[18] Beans, 965 P.2d at 727.
[19] Beans, 965 P.2d at 727.
[20] Beans, 965 P.2d at 727.
[21] Beans, 965 P.2d at 727.
[22] Beans, 965 P.2d at 727.
[23] 935 F.Supp. 1037 (1995).
[24] Thompson, 935 F.Supp. at 1040.
[25] 151 Wash.2d 664, 91 P.3d 875 (2004).
[26] Moore, 151 Wash.2d at 669, 91 P.3d 875.
[27] Moore, 151 Wash.2d at 677, 91 P.3d 875.
[28] WAC 388-14A-4530.
[29] Grader v. City of Lynnwood, 45 Wash.App. 876, 879, 728 P.2d 1057 (1986).
[30] State v. Rowe, 60 Wash.2d 797, 799, 376 P.2d 446 (1962).
[31] Rowe, 60 Wash.2d at 799, 376 P.2d 446 (citing State v. Lundquist, 60 Wash.2d 397, 401, 374 P.2d 246 (1962)).