Filed 3/18/14  Southwick v. Crownover CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| PAUL J. SOUTHWICK,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>MAGUERITE A. CROWNOVER,<br><br>　　　Defendant and Respondent.<br><br>SONOMA COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>　　　Intervenor and Respondent. | A135153<br><br>(Sonoma County<br>　Super. Ct. No. SFL 957331) |

This is an appeal from an order denying the request of appellant Paul J. Southwick to compel respondent Sonoma County Department of Child Support Services (department) to release the hold placed on his Contractor's license for noncompliance with a valid child support order and his related request for reconsideration.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

We briefly set forth the history of this decades-long marital dissolution matter, which, we note, is before this court for a second time.  (*Southwick v. Crownover*, A121579, July 31, 2009 (nonpub.).)  The parties married in 1984 and finally divorced in 1992 after legally separating in 1989.  Pursuant to the 1992 judgment of dissolution (1992 judgment), Crownover was granted physical custody of the parties' three children, who have now all reached the age of majority, while Southwick was granted frequent

1

visitation and ordered to pay $670 monthly in child support. At the time, Southwick already owed over $79,000 in child support arrearages.

In 2007, the 1992 judgment was amended to order Southwick to pay arrearages in monthly payments of $200. On January 22, 2008, Southwick filed a request for rehearing and an application to set aside portions of the 1992 judgment, as modified in 2007, on the ground that the judgment was tainted by Crownover's alleged fraudulent and perjurious statements.[1] The trial court declined to set aside the 1992 judgment after finding Southwick's claims time-barred, and instructed him to submit forms to enable it to determine a monthly payment plan for the arrears. An Order on Arrearages was then issued in May 2008, requiring Southwick to pay $500 per month. Southwick appealed this order, which we affirmed after concluding, among other things, the trial court properly found his claims time-barred. Southwick's subsequent petitions for review to the California and United States Supreme Courts were denied.

Following several years of inactivity in this matter, Southwick filed on August 29, 2011 a "Notice of: Cease and Desist," requesting the department immediately cease and desist from enforcing the May 2008 Order on Arrearages on the ground that the order is "wholly void for jurisdiction" because the 1992 judgment, in turn, is "void." On September 15, 2011, the department then served Southwick with a 30-day notice of intent to suspend his license pursuant to Family Code section 17520 based on information received from the department that Southwick was not in compliance with a child support order or judgment. This notice advised Southwick that, if he objected to suspension of his license, he was required to submit the enclosed "Notice of Request for Review" to the department. Southwick filed the requisite notice and, on October 25, 2001, the matter was heard by Commissioner Louise B. Fightmaster (Commissioner). Following this hearing, the Commissioner denied Southwick's request to release the hold on his Contractor's license.

---

[1] Southwick claimed he first "discovered" the fraud in late 2007 while "researching case documents essentially forgotten" in connection with a court hearing regarding the suspension of his contractor's license for failure to make his support payments.

2

On October 13, 2011, Southwick filed a notice of motion in Superior Court stating as follows: "Emergency Ex-Parte Hearing requested due to the [department's] 30 day notice of intent to suspend. The [department] has failed in writing to afford me any decision. I have no other remedy but file accordingly by way of this motion. Suspension takes effect Oct. 16, 2011. Application made for review to DCSS, no response. Parties served [b]y mail and in person of this request. Order of May 15, 2008, VOID for lack of SUBJECT MATTER JURISDICTION. Judgment in case no. SM-65005 VOID for judicial action inconsistent w[ith] due process and excess of jurisdiction." On October 27, 2011, Southwick then filed a Notice of Objection in Superior Court to the Commissioner's findings and recommendation, requesting "the matter be set for a de novo (new) hearing before a superior court judge." His request was granted, and a hearing was set for November 9, 2011.

On February 2, 2012, the trial court issued an order following the de novo review hearing (Fam. Code § 4251, subd. (b)), accepting the Commissioner's findings and recommendation to deny Southwick's request for release of the hold on his Contractor's license. In doing so, the trial court observed: "[Southwick's] objections mainly sound as a request for reconsideration of a series of judgments and orders entered in this case over the past decade. Even if the court were to construe [his] objections as a motion for reconsideration, it would be untimely and barred by the appellate decision affirming the denial of [his] appeal of the earlier denial of his request to set aside those same orders, and [he] has not asserted any new facts or law which would support a motion for reconsideration. (C.C.P. § 1008.)"

Southwick filed a motion for reconsideration on February 14, 2012, which was denied March 23, 2012, for failure to present new facts or law in support of it. His appeal of the February 2 and March 23, 2012, orders followed.[2]

---

[2]     At oral argument, Southwick advised this court for the first time that the department had released the hold on his Contractor's license. The department, in turn, confirmed that Southwick's ex-wife, Crownover, had closed the case and, thus, that there was no longer any child support order to be enforced. However, none of this information

3

# DISCUSSION

Southwick, proceeding in propria persona, raises quite literally dozens of arguments on appeal. In doing so, Southwick challenges not just the orders identified in his notice of appeal (to wit, the February and March 2012 orders regarding his objection to suspension of his Contractor's license), but also past orders and judgments dating from 1992. His arguments generally fall into one of two categories. First, Southwick contends all trial and appellate court orders since the 1992 judgment, as modified in 2007, are void because the judgment itself is void as an act in excess of the court's jurisdiction. Southwick reasons that the 1992 judgment exceeded the court's jurisdiction because he was not afforded his constitutional right to a "veracity hearing" on allegations raised by Crownover during the dissolution proceedings. Second, Southwick contends the statute authorizing suspension of his Contractor's license, Family Code section 17520 (section 17520), is unconstitutional and contrary to various federal statutes. With respect to the first category of arguments stemming from Southwick's theory that the 1992 judgment is void, we quickly dispose of them in bulk on the basis of one or more of the following legal grounds: res judicata, law of the case, or noncompliance with mandatory rules of appellate practice.

First, with respect to res judicata and law of the case, the dimensions of these legal doctrines are well-established. " 'The doctrine of the law of the case is this: That where, upon an appeal, the [reviewing] court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, and, as here assumed, in any subsequent suit for the same cause of action . . . ' [Citation.]" (*People v. Stanley* (1995) 10 Cal.4th 764, 786.) The doctrine of res judicata, in turn, holds: "[A]ll claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a

is in the appellate record, and neither party has indicated any desire to dismiss this appeal. Accordingly, we continue with our review of the issues raised herein based only on the appropriate record.

4

later date. ' "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." ' [Citation.] A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*.' (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 280, p. 820.)" (*Mycogen Corp. v. Monsanto Co*. (2002) 28 Cal.4th 888, 897. Further, these doctrines undoubtedly apply to marriage dissolution proceedings. (*Moffat v. Moffat* (1980) 27 Cal.3d 645, 656-657.) And they apply squarely to this case, barring Southwick's attempts to relitigate legal or factual issues already finally decided by this court, including issues regarding any purported due process right to a veracity hearing on Crownover's allegations against him. Quite simply, the validity of the 1992 judgment dissolving the parties' marriage and ordering child support, as modified in 2007, has already been upheld on appeal to this court, Southwick's two subsequent petitions for review to higher courts were denied, and the judgment has thus long been final. As such, his belated attacks on the 1992 judgment and subsequent support orders are not well-taken.[3]

---

[3]    Southwick contends res judicata does not apply to void judgments. However, his own authority makes clear this exception applies only where the judgment is void on its face, meaning "its invalidity is apparent from inspection of the judgment roll." (*Dill v. Berquist Constr. Co*. (1994) 24 Cal.App.4th 1426, 1441.) Such is not the case here. (See also *Hollywood Circle, Inc. v. Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 731 ["An act that may be in excess of jurisdiction so as to justify review by prerogative writ [citations] will nevertheless be res judicata if the court had jurisdiction over the subject and the parties"].)

Southwick also contends res judicata does not apply to child support orders because such orders are subject to revocation or modification at any time upon a proper showing. However, Southwick has not filed a petition to modify or revoke the May 2008 Order on Arrearages setting forth a proper showing; rather, he filed a petition challenging the suspension of his Contractor's license. Further, while there are exceptions to these doctrines, none are applicable here. (E.g., *George Arakelian Farms v. Agric. Labor Rels. Bd.* (1989) 49 Cal.3d 1279, 1291 [recognizing law-of-the-case may include exceptions when "(1) there has been an intervening change in the law, or (2) the disputed issue was not presented or considered in the proceedings below, or (3) application of the doctrine would result in a manifest injustice"].)

5

Moreover, to the extent we could read any of Southwick's challenges to the 1992 judgment or subsequent child support orders as falling outside the scope of these doctrines (which we doubt), we would nonetheless refuse to consider them for another well-established reason: Southwick's briefing of these issues fails in innumerable instances to comply with the most basic rules of appellate procedure.

Most notably, Southwick has failed his burden to provide reasoned arguments based on relevant legal authority and supported by proper record citation demonstrating the presumably correct court orders are subject to reversal. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is well-established that, in courts of appeal, "conclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408. See California Rules of Court, rule 8.204(a)(1)(B) [appellate briefs must "support each point by argument and, if possible, by citation of authority; and [¶] [s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].)[4] Here, however, Southwick simply sets forth an extensive list of purported errors in his efforts to attack the 1992 judgment and related orders without providing the court with a reasoned and supported legal analysis to prove any actual error.[5] To name just a few of his many rule violations, Southwick's briefs lack appropriate citation to the record (rule 8.204(a)(1)(C)), fail to "[p]rovide a summary of the significant facts limited to matters in the record" (rule 8.204(a)(2)(C)), and fail to "support each point by argument and, if possible, by citation of authority" (rule 8.204(a)(1)(B)). Southwick's briefs are thus "in dramatic noncompliance with appellate procedures." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) Accordingly, we are

---

[4]    All citations in this opinion to "rule(s)" refer to the California Rules of Court.

[5]    Among other claims included in his briefs, Southwick identifies the dissolution proceedings as a "sham", accuses the People's appellate counsel (referred to repeatedly in briefing by his first name) of "lying", and claims that the trial judge and Commissioner "colluded and conspired to 'Fix' the record", the department " 'shield[ed]' the respondent mother from criminal prosecution in exchange for the continual receipt of federal incentive funds on grossly exaggerated 'arrears' that are unverified", Crownover and the department kidnapped his children, and the Commissioner is biased and incompetent . Nearly, if not all, of these assertions are without citation to evidence.

6

entitled to, and do treat his arguments as forfeited.[6] (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; *People v. ex rel. Dept. of Alcoholic Beverage Control v. Miller Brewing Co.* (2002) 104 Cal.App.4th 1189, 1200.)

We are thus left with Southwick's challenges to the legality of section 17520, which, for reasons set forth below, we reject on the merits. Southwick's primary argument is that section 17520 violates due process because its procedural framework is "grossly inadequate and vague." Among other things, Southwick condemns the statute for authorizing administrative review of the decision to suspend his Contractor's license by the department rather than by the agency issuing his license, and for failing to define the term, "relevant defenses," which individuals challenging license suspensions under section 17520 are entitled to present . Southwick also contends the statute fails to ensure individuals, including himself, receive prior to suspension "administrative findings of fact and conclusions of law based upon the weight of the evidence and entered on a written record preceded by 'Notice,' a written allegation, and an 'Opportunity to be Heard.' " We reject Southwick's facial and as-applied challenges to section 17520 for several reasons.

The Fourteenth Amendment " 'places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause.' " (*Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 108 (*Bostean*), quoting *Coleman v. Department of Personnel Admin.* (1991) 52 Cal.3d 1102, 1112.) Generally, due process requires that an individual be afforded notice and an opportunity for a hearing before being deprived of a property interest so as to ensure reasonable grounds exist to support the deprivation. (*Bostean, supra*, 63 Cal.App.4th at pp. 112-113, citing *Gilbert v. Homar* (1997) 520 U.S. 924, 933;

---

[6] In so concluding, we remind Southwick that "mere self-representation is not a ground for exceptionally lenient treatment. Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.) Nor is self-representation license to cast aspersions regarding the integrity or competence of court officers, opposing parties or their counsel.

see also *Israni v. Superior Court* (2001) 88 Cal.App.4th 621, 633 [federal and state constitutional rights to procedural due process "generally include the right to notice and an opportunity to be heard before a person is deprived of a significant property interest"].)[7]  However, ultimately, the concept of "[d]ue process is flexible and calls for such procedural protections as the particular situation demands."  (*Civil Service Assn. v. City & County of San Francisco* (1978) 22 Cal.3d 552, 561, quoting *Morrissey v. Brewer* (1972) 408 U.S. 471, 481.)  In particular, contrary to Southwick's suggestions, due process does not require any particular type or timing of hearing, so long as the hearing provides a meaningful opportunity to be heard so as to ensure reasonable grounds support the order of deprivation.  (*Bostean, supra*, 63 Cal.App.4th at pp. 112-113; see *Bradshaw v. Park* (1994) 29 Cal.App.4th 1267, 1278 ["Due process does not require a hearing at the initial stage or at any particular point of an administrative process so long as the requisite hearing is held before the final order becomes effective"].)

Here, of course, suspension of Southwick's Contractor's license was pursuant to section 17520.  Under this statute, individuals applying for issuance or renewal of certain licenses, including professional licenses, who are not in compliance with a judgment or order for child support, may be subject to the nonissuance or nonrenewal of the desired license.  Specifically, if the applicant is named in the most recent "certified consolidated list" based on information provided by a local child support agency to the California Department of Child Support Services, the relevant licensing board or agency must notify the applicant of its intent to withhold issuance or renewal of his or her license.  (§ 17520, subds. (d), (f), (e)(2)).)  This notice, given to the applicant personally or by mail to his or her last known mailing address, must advise that the board will issue a temporary license

---

[7]     To determine in a particular case what process is required by the Fourteenth Amendment " 'we have generally balanced three distinct factors:  [¶] 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.' *Mathews v. Eldridge* (1976) 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 . . . .' " (*Bostean, supra*, 63 Cal.App.4th at p. 113, quoting *Gilbert, supra*, 520 U.S. at pp. 930-931.)

for 150 calendar days if the applicant is otherwise eligible for licensure, but upon expiration of the 150-day period the license will be denied unless the board has received a release from the local child support agency that identified the applicant for the certified list. (§ 17520, subds. (f)(1), (e)(2)).)

After receiving notification of intent to withhold issuance or renewal of license, the applicant may obtain review from the local child support agency of the placement of his or her name on the certified list (§ 17520, subds. (g), (j)) and, in addition, may seek superior court judicial review of the agency's refusal to release the applicant for licensure (§ 17520, subd. (k)). With respect to the agency review, the statute gives applicants receiving this notice the right to, among other things, "have the underlying arrearage and any relevant defenses investigated," and to seek modification of the underlying support judgment or order or request "assistance in the establishment of a payment schedule" (§ 17520, subd. (g)(1)). Written resolution of the dispute must generally be issued by the agency within 30 days of receipt of the applicant's request for review (§ 17520, subd. (h)). If the agency makes a determination of noncompliance with a support order or judgment, it must so advise the applicant, and also advise of his or her right to judicial review (§ 17520, subd. (j)).

If the applicant thereafter seeks judicial review, the request for review must state grounds for relief, and the review is then limited to those grounds. Judicial review is generally limited to the following determinations: (1) whether there is a support judgment or order on arrearages; (2) whether the petitioner is covered by such judgment or order; (3) whether the petitioner is in compliance with such judgment or order; and (4) whether the needs of the petitioner warrant a conditional release. (§ 17520, subd. (k).) The court may then decide to uphold the action, conditionally release the license, or unconditionally release the license.[8] (*Ibid*.) If the applicant subsequently complies with

---

[8] This review process is the applicant's sole administrative remedy for contesting denial or suspension of a license under section 17520. (§ 17520, subd. (o).) However, in addition to or in lieu of seeking judicial review of the agency's findings, the applicant may file an order to show cause or notice of motion to modify a support judgment or

9

the judgment or order, or otherwise prevails on agency or judicial review, he or she must be issued a release by the agency (§ 17520, subds. (j), (k)).

Having considered these comprehensive notice and hearing provisions, we are at a loss as to how the statute fails to comport with the dictates of due process. Not only does section 17520 mandate that an applicant receive notice prior to suspension of his or her license, the statute provides clear instructions as to the form this notice must take, including the information that must be included therein. Section 17520 also mandates that an applicant subject to such notice have the right to object to suspension of his or her license, and the right to full administrative and judicial review of any subsequent finding or decision that suspension is warranted due to an applicant's noncompliance with a valid support judgment or order. These pre-suspension notice and hearing procedures suffice to ensure reasonable grounds exist to support the deprivation of an applicant's interest in holding a particular license. It also serves the important government interest in ensuring children are financially supported by their parents. (*Tolces v. Trask* (1999) 76 Cal.App.4th 285, 291.) Due process requires nothing more. (*Bostean, supra*, 63 Cal.App.4th at pp. 112-113; *Israni v. Superior Court, supra,* 88 Cal.App.4th at p. 634.)

However, having concluded section 17520 facially comports with due process, there nonetheless remains the issue of whether Southwick was afforded due process as the statute was applied to him. We believe he was. Consistent with the requirements of section 17520, the department notified Southwick by letter on September 15, 2011 that he was facing possible suspension based on his noncompliance with the May 2008 Order on Arrearages. This "Notice of Intent to Suspend," among other things, advised him of his right to timely object to the impending suspension of his license, which right he exercised on October 3, 2011, by submitting the requisite form to the department indicating his request for review. A hearing was then held before the Commissioner on October 25, 2011, at which Southwick and the department appeared. Following this contested hearing, the Commissioner issued a written recommendation (which was later amended)

order, to fix a payment schedule on arrearages, or to obtain a court finding of compliance with the support judgment or order. (§ 17520, subd. (j).)

10

to deny Southwick's request to release his license.  This decision also provided him information regarding, among other things, his right to seek modification of the relevant support order.  Southwick immediately filed an objection but did not seek to modify the May 2008 Order.

At this point, Southwick availed himself of his statutory right to judicial review by filing a notice of motion and motion in Superior Court for judicial review of the hold on his license.  His motion was granted and he received a full de novo hearing.  Following the hearing, the court upheld the Commissioner's decision that suspension was warranted in a six-page written decision.  The court thereafter denied Southwick's subsequent petition for rehearing based on his failure to provide any new evidence or fact in support of it (which failure, we note, is readily apparent from his petition).

On this record, we reject Southwick's due process challenge.  In particular, we note that Southwick received notice of the department's intent to suspend his license met the requirements of section 17520, and he thereafter was afforded, and took advantage of, multiple opportunities to be heard on his objection to the hold on his license before both the Commissioner and the trial court.  Accordingly, Southwick received all the due process to which he was entitled.

In so concluding, we are quick to add there is no dispute regarding Southwick's noncompliance with the May 2008 Order on Arrearages, which, in turn, provided the necessary factual basis under section 17520 for suspension of his license.  Southwick does not deny the basic facts that he had over $58,000 in child support arrearages and had not paid more than one dollar a month in arrearages for several months, placing him in clear violation of the May 2008 Order.  Accordingly, even assuming for the sake of argument Southwick was denied some procedural right to which he was entitled during these proceedings,[9] we can conceive of no manner in which he has suffered manifest injustice as a result.  (*In re La Croix* (1974) 12 Cal.3d 146**,** 154-155 ["Prejudice is not

---

[9]    For example, Southwick points out that the Commissioner's written findings and recommendation to deny his request to release the hold on his Contractor's license does not contain specific factual findings regarding his case.

presumed merely because of a failure to comply and in particular instances denials of constitutional proportions may be deemed harmless. However, 'before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt' "]; see *Krontz v. City of San Diego* (2006) 136 Cal.App.4th 1126, 1141.) Because we can state with certainty that any denial of Southwick's due process rights was harmless beyond a reasonable doubt, his as-applied statutory challenge necessarily fails. [10]

Next, with respect to Southwick's equal protection challenge, we again conclude the statute withstands scrutiny. Southwick argues in this regard the statute violates the

---

[10] Southwick raises two related arguments either in his briefs or at oral argument. First, he argues section 17520 violates federal law – to wit, the Administrative Procedures Act, Title 5, U.S.C. § 500 et seq., and the Social Security Act, Title 42, U.S.C. § 666. Southwick appears to reason that section 17520 is derived from a "federally funded statute," which somehow makes California agencies subject to federal procedural laws. Southwick also suggests that California's receipt of federal funding creates a "pecuniary interest" for the department that causes bias. However, Southwick's reasoning on these points is not at all clear in his briefs and, more specifically, is not supported by a reasoned analysis of the *relevant* facts and law. Accordingly, we treat these arguments, like many of his others, as forfeited. (rule 8.204(a)(1).) We are "not bound to develop appellants' arguments for them." (*In re Marriage of Falcone & Fyke, supra,* 164 Cal.App.4th at p. 830.) We do note, however, section 666 of the Social Security Act requires states to implement laws authorizing suspension of professional licenses upon "appropriate notice," which we have already determined section 17520 does. (42 U.S.C. § 666, subd. (a)(16).)

Second, Southwick argued for the first time at oral argument that section 17520 applies only to "welfare cases", and not to "private family law" cases such as this one. Not only is his argument forfeited as untimely, it also lacks merit. Section 17520, on its face, provides: "The local child support agency shall maintain a list of those persons included in a case being enforced under Title IV-D of the Social Security Act *against whom a support order or judgment has been rendered* by, or registered in, a court of this state, and who are not in compliance with that order or judgment." (§ 17520, subd. (b).) Further, the act provides: " 'Compliance with a judgment or order for support' means that*, as set forth in a judgment or order for child or family support,* the obligor is no more than 30 calendar days in arrears in making payments in full for current support, in making periodic payments in full, whether court ordered or by agreement with the local child support agency, on a support arrearage . . . ." (§ 17520, subd. (a)(4).) The statutory language thus directly undermines Southwick's claim that child support matters do not fall under section 17520.

12

equal protection clause by holding licensees who are subject to support orders to different standards than other licensees. (AOB 30)~ However, courts in California and beyond have rejected this equal protection argument in cases involving license suspensions for noncompliance with child support orders with reasoning we find persuasive:

" ' "Unless a statute provokes strict judicial scrutiny" because it interferes with a "fundamental right" or discriminates against a "suspect class," it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose. [Citations.]' (*Kadrmas v. Dickenson Public Schools* (1988) 487 U.S. 450, 457 . . . .) [¶] Here, [the licensee] has failed to establish that [Welfare & Institutions Code] section 11350.6 [predecessor statute to section 17520] interferes with any fundamental right, or that it discriminates against a suspect class. Moreover, it is rationally related to a legitimate governmental purpose. The purpose of section 11350.6 is to enforce child support orders. 'The obligation of a parent to support a child . . . is among the most fundamental obligations recognized by modern society. The duty is not simply one imposed by statute, but "rests on fundamental natural laws and has always been recognized by the courts in the absence of any statute declaring it." [Citation.] It is an obligation that existed under common law [citation] and has long been recognized in a majority of American jurisdictions as not only a moral obligation, but one that is legally enforceable. [Citation.]' (*Moss v. Superior Court* (1998) 17 Cal.4th 396, 409-410 . . . .)" (*Tolces v. Trask, supra,* 76 Cal.App.4th at p. 291.)

While *Tolces v. Trask* involved suspension of a driver's license rather than an occupational license, the Washington Supreme Court has applied similar reasoning where the driver's license at issue was in fact an occupational license:

"Here, the condition attached to [plaintiff's] commercial license, which he needs in order to pursue his occupation as a taxi driver, is compliance with a lawful court order of child support. It is reasonable for the legislature to believe that Washington's license suspension scheme will provide a powerful incentive to those in arrears in their child support payments to come into compliance. Moreover, the legislature has concluded that if an individual wishes to continue to receive the financial benefit that flows from

13

possessing a professional license granted by the State, that individual must not be permitted to burden the State by shifting the financial obligation to support his or her children to the State. In light of these considerations, we conclude that there is a rational relationship between professional license suspension and the State's interest in enforcing child support orders. [¶] Other courts considering this question have reached a similar conclusion. *See State v. Beans*, 965 P.2d 725 (Alaska 1998) (license suspension is particularly effective against child support obligors and is rationally related to legitimate state interest); *Tolces v. Trask* (1999) 76 Cal.App.4th 285, 90 Cal.Rptr.2d 294 (1999) (license suspension is rational means of achieving the State's interest in enforcing child support orders); *State v. Leuvoy*, 2004 Ohio 2232, *appeal denied,* 103 Ohio St.3d 1428 (same; no substantive due process violation); *Thompson v. Ellenbecker*, 935 F.Supp. 1037 (D.S.D. 1995) (no substantive due process violation because rational reasons support restriction on child support obligors' driver's licenses for nonpayment of child support)." (*Amunrud v. Bd. of Appeals* (2006) 158 Wn.2d 208, 225.)

We find the reasoning of these decisions persuasive and applicable. Accordingly, we reject Southwick's equal protection claim given that section 17520's enforcement mechanism has not been discriminatorily applied to him, and that its purpose in suspending licenses is a rational means of achieving our State's interest in enforcing child support orders. (See *Moss v. Superior Court* (1998) 17 Cal.4th 396, 409-410.)

Finally, with respect to Southwick's scattering of other arguments regarding section 17520, many of which are raised for the first time in his reply brief, we reject them once again on forfeiture grounds based on his failure to comply with mandatory rules of appellate procedure.[11] With respect to Southwick's request that we treat his appeal as a petition for "Alternative Writ in the First Instance," we deny it as moot. And, with respect to his request to "certify the case for review" to the California Supreme

---

[11]     To again name some examples, Southwick argues without record citation or legal analysis that section 17520 violates his constitutional rights to freely contact and associate (U.S. Const., Art. 1, § 10), amounts to an impermissible taking of his property (U.S. Const., 5th and 14th Amends.; Cal. Const., Art. 1 §§ 1, 7), and improperly grants "quasi-judicial adjudicatory powers" to case workers.

Court and to stay further proceedings until the constitutional issues raised herein are resolved by the high court, we deny it as inconsistent with the appellate procedures of this State. Southwick is of course entitled to file a petition for review of this opinion with the California Supreme Court, should he so desire.

## DISPOSITION

The February and March 2012 orders of the trial court are affirmed, as well as the other orders Southwick purports to challenge. Respondents are entitled to recover costs on appeal.

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Siggins, J.